No. 25-30392

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

_____

ALBERT M. HAYES,

*Plaintiff-Appellant,*

*v.*

GSTEK, INCORPORATED,

*Defendant-Appellee*

_____

On Appeal from the United States District Court
for the Western District of Louisiana, Lake Charles Division

_____

## OPENING BRIEF OF PLAINTIFF-APPELLANT ALBERT M. HAYES

_____

**SUDDUTH & ASSOCIATES, LLC**
1109 Pithon Street
Lake Charles, Louisiana 70601
Tel: (337) 480-0101
Fax: (337) 419-0507
Email: james@saa.legal
Email: kourtney@saa.legal

**BY:** /s/ James E. Sudduth, III
JAMES E. SUDDUTH, III
KOURTNEY L. KECH

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. **Plaintiff-Appellant**

   ALBERT M. HAYES

2. **Defendant-Appellee**

   GSTEK, INCORPORATED

3. **Counsel for Plaintiff-Appellant**

   James E. Sudduth, III
   Kourtney L. Kech
   SUDDUTH & ASSOCIATES, LLC
   1109 Pithon St.
   Lake Charles, Louisiana 70601

4. **Counsel for Defendant-Appellee**

   William M. Palmer
   KAUFMAN & CANOLES
   150 W. Main St., Ste. 2100
   Norfolk, Virginia 23510

   and

   Ross M. Raley
   STOCKWELL, SIEVERT, VICCELLIO, CLEMENTS & SHADDOCK, L.L.P.
   127 W. Broad St., 4th Floor
   Lake Charles, Louisiana 70601

DATED:     September 22, 2025

**SUDDUTH & ASSOCIATES, LLC**

/s/ James E. Sudduth, III

JAMES E. SUDDUTH, III

*Counsel for Plaintiff-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

The factual circumstances underpinning Appellant's claims are straightforward and limited in scope, and the primary issue on appeal is whether the lower court derogated from the type of judicial review permitted for motions brought pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(c). Appellant does not believe that oral argument is necessary to resolve the matters at issue in this appeal; however, to the extent the Court finds that oral argument may benefit the Court's analysis, Appellant is happy to oblige.

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iv

TABLE OF AUTHORITIES ................................................................................ viii

PRELIMINARY STATEMENT .............................................................................. 1

JURISDICTIONAL STATEMENT ......................................................................... 2

STATEMENT OF THE ISSUES PRESENTED ...................................................... 2

STATEMENT OF THE CASE ................................................................................. 3

    I.    Hayes's Underlying Discrimination and Retaliation Claims .................... 3

        A. May 2022: Hayes is Formally Diagnosed with Autism, Major Depressive Disorder, and Social Anxiety Disorder ............................. 4

        B. August 2022: Hayes Admits to an Inpatient Psychiatric Facility ......... 4

        C. October 12, 2022: Hayes Requests an Accommodation in the Form of a Reversion to Full-Time Telework ........................................ 5

        D. October 27, 2022: GStek Determines that Hayes's Reversion to Full-Time Telework Would Enable Him to Perform the Essential Functions of His Position ..................................................................... 5

        E. November 8, 2022: The Army Declines Hayes's Full-Time Telework Request; GStek Offers Hayes a Lesser Accommodation ..... 6

        F. December 2022—Early January 2023: Hayes Tries the Modified Accommodation Without Success and Suffers a Psychiatric Episode Beginning January 16, 2023 ................................................... 6

  G. January 18-24, 2023: Hayes Requests Additional Accommodation(s) From GStek and Receives No Material Response ...............................7

  H. January 25, 2023: Hayes is Terminated from Employment ................8

II. Hayes Attempts to Exhaust Administrative Remedies with Respect to Both the Army and GStek ........................................................................8

III. Hayes Files Suit, the Army Moves for Dismissal, and GStek Moves for a Judgment on the Pleadings..............................................................10

IV. The District Court Grants GSTek's Motion for Judgment on the Pleadings...................................................................................................13

SUMMARY OF THE ARGUMENT ....................................................................15

STANDARD OF REVIEW ...................................................................................19

ARGUMENT .........................................................................................................22

I. The District Court Incorrectly Dismissed Hayes's ADA Failure-to-Accommodate Claim Against GStek .......................................................22

  A. The District Court Impermissibly Disregarded and/or Discredited the Factual Allegations Pled in Hayes's Original Complaint ............23

    1. The District Court Impermissibly Disregarded Hayes's Factual Allegations to Determine 1) Full-Time In-Person Attendance was an Essential Function of Hayes's Position and 2) Hayes Was Not a "Qualified Individual" Subject to ADA Protection........23

    2. The District Court Impermissibly Disregarded Hayes's Factual Allegations and Found that Permitting Full-Time Telework Would "Breach" the Army-GStek Contract and Result in Cancellation of the Same ...................................................................................29

3. The District Court Impermissibly Disregarded Hayes's Factual Allegations and Found that GStek's Provision of the Hybrid Work Schedule was a "Reasonable Accommodation" that Satisfied its ADA Obligations Indefinitely ...................................31

a. Hayes's Complaint Sufficiently Alleges that His Request for Full-Time Telework was Reasonable...........................................................33

b. Under the Facts of this Case, Hayes's Request For Full-Time Telework was Not Simply His "Preferred" Accommodation...............................37

c. Hayes's Complaint Sufficiently Alleges that Accommodating His Full-Time Telework Request Did Not Impose Undue Hardship on the Army or GStek ....................................................40

II. The District Court Erroneously Considered Hayes's Failure-to-Accommodate, Disparate Treatment, and Retaliation Causes of Action as "Indistinguishable Claims .........................................................43

A. Disparate Treatment and Failure-to-Accommodate Claims are Wholly Distinct Claims ......................................................44

B. The District Court's Reliance on *Johnson* is Wholly Misplaced........47

III. Hayes's Original Complaint Asserts Plausible Claims for Failure-to-Accommodate, Discriminatory Discharge (Disparate Treatment), and Retaliatory Discharge Against GStek.......................................................51

CONCLUSION .................................................................55

CERTIFICATE OF SERVICE ...............................................56

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. PRO 32 AND 5th CIR. R. 32 .........................................57

# TABLE OF AUTHORITIES

**Case Law**                                                      **Page(s)**

*Ali v. Regan,*
111 F.4th 1264 (D.C. Cir. Aug. 9, 2024) ........................................... 35, 36

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ................................................................... 20

*Baily v. Bd. of Comr's of La. Stadium and Exposition. Dist.,*
484 F.Supp.3d 346 (E.D. La. Sept. 4, 2020) ..................................... 38

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 562 (2007) ................................................................. 20, 21

*Bess v. District of Columbia,*
2020 WL 4530581 (D.D.C. Aug. 6, 2020) ........................................ 48, 49

*Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*,
313 F.3d 899 (5th Cir. 2002) ............................................................ 22

*Broughton v. Livingston Independent Sch. Dist.,*
2009 WL 10707489 (E.D. Tex. Jun. 11, 2009) ................................. 21

*Brown v. Smith*,
827 F.3d 609 (7th Cir. 2016) ............................................................ 25

*Brumfield v. City of Chicago*,
735 F.3d 619 (7th Cir. 2013) ............................................................ 46

*Burton v. Freescale Semiconductor, Inc.,*
798 F.3d 222 (5th Cir. 2015) ....................................... 3, 18, 30, 42, 43

*Carr v. Reno*,
23 F.3d 525 (D.C.Cir.1994) .............................................................. 24

*Chandler v. City of Dallas*,
2 F.3d 1385, 1393 (5th Cir. 1993), *cert. denied*,
511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994) ................... 25

*Clark v. Charter Commc'ns, L.L.C.*,
775 F. App'x 764 (5th Cir. 2019) ........................................................24

*Cloutier v. Costco Wholesale Corp.*,
390 F.3d 126 (1st Cir. 2004) ...............................................................40

*Colwell v. Rite Aid Corp.*,
602 F.3d 495 (3rd Cir. 2010) ..........................................................38, 39

*Cormier v. McDonough*,
2021 WL 6498090 (S.D. Tex. Dec. 7, 2021) .......................................35

*Credeur v. Louisiana*,
860 F.3d 785 (5th Cir. 2017) ...............................................................25

*Cripe v. City of San Jose*,
261 F.3d 877 (9th Cir. 2001) ...............................................................25

*Dean v. University at Buffalo Sch. of Med. and Biomed. Sciences*,
804 F.3d 178 (2d Cir. 2015)..................................................................33

*Dunlap v. Liberty Natural Products, Inc.*,
878 F.3d 794 (9th Cir. 2017) ...............................................................44

*E.E.O.C. v. Agro Distrib.*,
555 F.3d 462 (5th Cir. 2009) ..........................................................37, 39

*E.E.O.C. v. AutoZone*,
809 F.3d 916 (7th Cir. 2016) ...............................................................46

*E.E.O.C. v. LHC Grp., Inc.*,
773 F.3d 688 (5th Cir. 2014) ...........................................25, 26, 44, 45

*E.E.O.C. v. Methodist Hospitals of Dallas*,
62 F.4th 938 (5th Cir. 2023) ...............................................................32

*Exby-Stolley v. Bd. of Cnty. Comm'rs*,
979 F.3d 784 (10th Cir. 2020) ......................................................45, 46, 47

*Freeman v. Savard Labor & Marine, Inc.*,
2021 WL 4230547 (W.D. La. Jun. 27, 2023) ........................................................54

*Frye v. Aspin*,
997 F.2d 426 (8th Cir. 1993) .................................................33

*Fuller v. Frank*,
916 F.2d 558 (9th Cir. 1990) .................................................33

*Gentilello v. Rege*,
627 F.3d 540 (5th Cir. 2010) .................................................20

*Gosby v. Apache Industrial Services, Inc.*,
30 F.4th 523 (5th Cir. 2022) ...........................................53, 54

*Guidry v. American Pub. Life Ins. Co.*,
512 F.3d 177 (5th Cir. 2007) .................................................21

*Harris v. Carrier Corp.*,
2017 WL 4037658 (S.D. Ind. Sept. 13, 2017) ......................................49

*Hebert Abstract v. Touchstone Props., Ltd.*,
914 F.2d 74 (5th Cir. 1990) (per curiam) ..............................................20

*Holbrook v. City of Alpharetta, Ga.*,
112 F.3d 1527 (11th Cir. 1997) .................................................25

*Holly v. Clairson Indus., L.L.C.*,
492 F.3d 1247 (11th Cir. 2007) .................................................45

*Hoskins v. Oakland County Sheriff's Dep't*,
227 F.3d 719 (6th Cir. 2000) .................................................25

*Humphrey v. Mem'l Hosp. Ass'n,*
239 F.3d 1128 (9th Cir. 2001) .................................................39

*Jenkins v. Cleco Power, LLC*,
487 F.3d 309 (5th Cir. 2007) .................................................24

*Johns v. Brennan,*
761 Fed. Appx. 742 (9th Cir. 2019)..........................................................39

*Johnson v. Norton Cnty. Hosp.,*
550 F.Supp.3d 937 (D. Kan. 2021).................................15, 47, 48, 49, 50

*Jones v. Blue Cross Blue Shield of Louisiana,*
2018 WL 618599 (M.D. La. Jan. 29, 2018)..............................................46

*Julian v. DeJoy,*
2024 WL 4433076 (5th Cir. 2024) ...........................................................44

*Kennedy v. Wells Fargo Bank, N.A.,*
2012 WL 13029372 at * 2 (W.D. Tex. Jul. 30, 2012) ............................20

*Kotaska v. Federal Express Corporation,*
966 F.3d 624 (7th Cir. 2020) ...................................................................25

*Lyons v. Katy Independent School District,*
964 F.3d 298 (5th Cir. 2020) ...................................................................55

*Mann v. Adams Realty Co.,*
556 F.2d 288 (5th Cir. 1977) ...................................................................21

*McGregor v. Louisiana State Univ. Bd. of Supervisors,*
3 F.3d 850 (5th Cir. 1993) .......................................................................33

*Miller v. Ill. Dep't of Transp.,*
643 F.3d 190 (7th Cir. 2011) ...................................................................25

*Moore-Fotso v. Bd. of Educ. of the City of Chicago,*
211 F. Supp. 3d 1012 (N.D. Ill. 2016) .....................................................49

*Moss v. Harris Cnty. Constable Precinct One,*
851 F.3d 413 (5th Cir. 2017) ...................................................................24

*Mullin v. Secretary, U.S. Department of Veterans Affairs,*
—F.4th—, 2025 WL 22677816 (11th Cir. 2025).....................................45

*Noll v. IBM Corp.*,
787 F.3d 89 (2d Cir. 2015)......................................................................33

*Owens v. Governor's Office of Student Achievement*,
52 F.4th 1327 (11th Cir. 2022) ..........................................................33, 36

*Panasonic Co., Div. of Matsushita Elec. Corp. of Am. v. Zinn*,
903 F.3d 1039 (5th Cir. 1990) ............................................................30, 43

*Pandazides v. Virginia Bd. of Educ.*,
13 F.3d 823 (4th Cir. 1994) ....................................................................33

*Phoenix v. Wormuth,*
2023 WL 9660884 (6th Cir. 2023) ..........................................................35

*Picard v. St. Tammany Parish Hosp.,*
611 F.Supp.3d 608 (E.D. La. Apr. 7, 2009)......................................40, 46

*Riel v. Electronic Data Systems Corp.*,
99 F.3d 678 (5th Cir. 1996) ....................................................................40

*Sewell v. Monroe City School Board,*
974 F.3d 577 (5th Cir. 2020) ..................................................................21

*Strife v. Aldine Independent School District*,
2025 WL 1416073 (5th Cir. 2025) ..........................................................55

*Terry v. Perdue,*
2021 WL 3418124 (4th Cir. 2021) ..........................................................35

*Thompson v. Microsoft Corp.*,
2 F.4th 460 (5th Cir. 2021) ...............................................................25, 36

*Turner v. Hershey Chocolate United States*,
440 F.3d 604 (3d Cir. 2006)....................................................................33

*US Airways, Inc. v. Barnett,*
535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002)...............32, 42, 46, 47

*Waller v. Hanlon*,
922 F.3d 590 (5th Cir. 2019) ...................................................................22

*Ward v. Massachusetts Health Research Inst., Inc.*,
209 F.3d 29 (1st Cir. 2000) ......................................................................25

*Ward v. McDonald*,
762 F.3d 24 (D.C. Cir. Aug. 12, 2014) ....................................................24

*Weber v. BNSF Ry. Co.*,
989 F.3d 320 (5th Cir. 2021) ...................................................................24

*Wetherbe v. Texas Tech University System*,
138 F.4th 296 (5th Cir. 2025) ..................................................................19

*Zenor v. El Paso Healthcare Sys., Ltd.*,
176 F.3d 847 (5th Cir. 1999) ...................................................................45

**Statutes**

28 U.S.C. § 1291 .......................................................................................2

28 U.S.C. § 1331 .......................................................................................2

29 C.F.R. § 1630.2(n)(3)...........................................................................25

29 C.F.R. § 1630.2(o)(1)(ii)......................................................................36

29 C.F.R. pt. 1630, App., § 1630.9 ..........................................................38

42 U.S.C. § 12101 *et seq.*.........................................................................2

42 U.S.C. § 12111(8) ................................................................................24

42 U.S.C. § 12111(9) ................................................................................32

42 U.S.C. § 12111(10) .........................................................................40, 42

42 U.S.C. § 12112(a) ...........................................................................31, 44

42 U.S.C. § 12112(b)(5)(A) ............................................................31, 32, 42, 45, 46

Fed. R. Civ. P. 12(b)(6) ...................................................................................2, 18, 21

Fed. R. Civ. P. 12(c) ..................................................................2, 16, 18, 19, 20, 21

**Other Sources**

EEOC, Work at Home/Telework as a Reasonable Accommodation (Feb. 3, 2003),
https://perma.cc/3CYS-RZ4A.) ...............................................................................35

Hittner, Schwarzer, Tashima & Wagstaffe, RUTTER GROUP PRAC. GUIDE:
FED. CIV. PRO. BEFORE TRIAL–5th Cir. ED. § 9:319 (The Rutter Group
2009) ......................................................................................................................21

Kevin W. Williams, The Reasonable Accommodation Difference: The Effect
of Applying the Burden Shifting Frameworks Developed Under Title VII
in Disparate Treatment Cases to Claims Brought Under Title I of the Americans
with Disabilities Act, 18 Berkeley J. Emp. & Lab. L. 98, 152 (1997) ...................47

## PRELIMINARY STATEMENT

Plaintiff-Appellant, Albert M. Hayes ("Hayes"), brings this litigation against Defendant-Appellee, GSTek, Incorporated ("GSTek"),[1] under the anti-discrimination and anti-retaliation provisions of the Americans with Disabilities Act of 1990, as amended. Hayes submits that he was denied a reasonable accommodation, and thereafter terminated, on the basis of his known, disabling condition(s). Hayes posits that that the district court erred when it granted GSTek's Motion for Judgment on the Pleadings, given that, in order to grant said Motion, the district court: 1) considered a *significant* amount of factual "information" not contained or even mentioned in Hayes' Original Complaint to declare that full-time in-person attendance was an essential function of Hayes's Level II System Administrator (IT Department) position; 2) made a determination of "reasonableness" as to the accommodation initially offered to Hayes without viewing the decision in light of all relevant facts; and 3) disregarded this Court's precedent to improperly find that failure-to-accommodate claims under the ADA are "inextricably intertwined" and, thus, "indistinguishable" from ADA disparate treatment and/or retaliation claims. Hayes's Original Complaint pleads facially plausible causes of action for ADA failure-to-accommodate, ADA disparate

---

[1] Hayes also included the Department of the Army as a Defendant in his Original Complaint; however, the district court dismissed the same via Memorandum Order dated January 15, 2025. ROA.133-41.

treatment, and ADA retaliation against GStek, and the district court erred to the extent it found to the contrary.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action under 28 U.S.C. § 1331. This action creates the existence of a federal question, as it arises under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

The district court rendered judgment on June 12, 2025, and Hayes filed a timely notice of appeal on July 10, 2025. ROA.214-15. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the district court's Judgment constitutes a final order or judgment that disposes of all parties' claims in Case No. 2:24-cv-01376. This is not an appeal from a decision of a magistrate judge.

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the district court impermissibly derogated from the scope of judicial review permitted by Fed. R. Civ. P. 12(b)(6) and 12(c) by making factual findings, credibility determinations, and drawing inferences against Hayes, as opposed to taking the allegations of Hayes's Original Complaint as true and resolving all inferences in Hayes's favor;

2. Whether the district court impermissibly derogated from the scope of judicial review permitted by Fed. R. Civ. P. 12(b)(6) and 12(c) by making a factual determination that full-time, in-person attendance was an

essential function of the Level II System Administrator (IT Department) position and that Hayes was not otherwise a "qualified individual";

3. Whether the district court erroneously disregarded this Court's holding in *Burton v. Freescale Semiconductor, Inc.*[2] to absolve GStek from liability for relying on discriminatory instructions provided by the Army;

4. Whether the district court erroneously disregarded this Court's precedent and relied upon inapposite caselaw to find that Hayes's ADA disparate treatment and/or retaliation claims were not distinct claims from ADA Hayes's failure-to-accommodate claim.

## STATEMENT OF THE CASE

### I.    Hayes's Underlying Discrimination and Retaliation Claims

Hayes began his employment with GC&E as a Level II System Administrator (IT Department) in approximately March 2021. At that time, GC&E maintained a contract with the Department of the Army (hereinafter "the Army"), through which it operated and maintained the Army's information systems and infrastructure for the bases located at Fort Polk, England Park, and Peason Ridge. While Hayes was employed by GC&E, Hayes successfully performed all essential functions of his position remotely (i.e., via telework). As such, Hayes performed the entirety of this role remotely for nearly one (1) year.

---

[2] 798 F.3d 222 (5th Cir. 2015).

In approximately December 2021, the Army IT contract transitioned from GC&E to Defendant-Appellee, GSTek. Commensurate with this transition, Hayes' employment automatically rolled from GC&E to GStek on approximately December 21, 2021. Though the name of Hayes's employer changed, Hayes continued performing work as a Level II System Administrator (IT Department).

Following the employment rollover, Hayes continued performing his job duties on an entirely remote basis until approximately February 2022.

### A. May 2022: Hayes is Formally Diagnosed with Autism, Major Depressive Disorder, and Social Anxiety Disorder

When Hayes transitioned from remote work to in-person work in approximately February 2022, he immediately became overstimulated. Hayes sought immediate medical treatment, which resulted in formal Autism, Major Depressive Disorder, and Social Anxiety Disorder diagnoses in May 2022.

### B. August 2022: Hayes Admits to an Inpatient Psychiatric Facility

In approximately August 2022, and due to being overstimulated in the in-person workplace, Hayes began experiencing suicidal ideations, which resulted in Hayes's admission to an inpatient psychiatric hospital located in Alexandria, Louisiana. Upon Hayes's return to work, neither the Army nor GSTek acknowledged the medical condition, nor did they discuss Hayes's absence resulting therefrom.

### C. October 12, 2022: Hayes Requests an Accommodation in the Form of a Reversion to Full-Time Telework

On October 12, 2022, Hayes submitted a Reasonable Accommodation Request form, therein requesting full-time remote work due to his medical conditions and effects of his evening medications. In support of this request, Hayes provided a physician's letter on October 18, 2022, wherein Hayes's treating physician recommended that, due to Hayes's conditions, he be permitted to return to telework. Hayes provided this letter to GSTek Human Resources ("HR"), his immediate supervisor, Charles Slate ("Slate"), and to the project manager, John Dismer ("Dismer").

GSTek management indicated to Hayes that it would escalate Hayes's accommodation request up the chain of command which, under salient facts, included Army officials overseeing the existing contract between the Army and GStek.

### D. October 27, 2022: GStek Determines that Hayes' Reversion to Full-Time Telework Would Enable Him to Perform the Essential Functions of His Position

On October 27, 2022, Dismer determined that Hayes could effectively continue his current duties through full-time remote work. Consequently, Dismer formally requested Hayes's work accommodation approval from the Army on October 28, 2022.

### E. November 8, 2022: The Army Declines Hayes's Full-Time Telework Request; GStek Offers Hayes a Lesser Accommodation

On or about November 8, 2022, Army representatives (referred to as "COR") refused Hayes's full-time telework request, stating only that "it would not be in the best interest of the organization to allow full-time teleworking."

In response, GStek indicated to Hayes that it would "try" to accommodate him by permitting him to work from home a couple of days per week (i.e., by modifying and reducing Hayes' initial request). In so doing, and despite having previously found that Hayes could perform all essential job functions on a remote basis, Dismer ultimately refused Hayes's request for full-time telework, stating 1) he (Dismer) oversaw several "disabled people," and 2) if he (Dismer) fully "accommodated" Hayes, he (Dismer) would have to do the same for everyone else.

### F. December 2022 – Early January 2023: Hayes Tries the Modified Accommodation Without Success and Experiences a Psychiatric Episode Beginning January 16, 2023

In every effort to maintain employment and engage in the ADA's required interactive process, Hayes attempted to perform his duties by working a hybrid in-person/remote schedule—i.e., working from home two (2) to three (3) days per week, with the remaining days at the Fort Polk jobsite.

On or about January 16, 2023, Hayes experienced a mental breakdown, which resulted in him working from home for four (4) consecutive days: January 16, 2023 through January 19, 2023. Immediately after experiencing the debilitating effects of

his medical conditions, Hayes made an emergency visit to his healthcare provider, which resulted in an increase of his medication dosage.

### G. January 18-24, 2023: Hayes Requests Additional Accommodation(s) from GSTek and Receives No Material Response

On January 18, 2023, Hayes informed Slate that he had been receiving continuing treatment for anxiety and depression, including both medication and counseling, and indicated to Slate that his treating physician had recommended that Hayes be permitted to "delay attending drill until a later date in order to give [Hayes's] treatment more time to provide further relief from anxiety."

Then, on approximately January 19, 2023, Hayes advised Slate that, as a result of his conditions, his treatment physician recommended that Hayes altogether take a leave of absence. Slate ignored this statement and, at no time, discussed any protected medical leave.

On January 23, 2023, Hayes advised Slate that he was experiencing difficulty adjusting to his new medication(s)/dosage(s), indicating: 1) his treating physician would not clear him to attend drill at that time; 2) he was requesting the ability to work from home. After not hearing from Slate, Hayes inquired whether he was expected to go in to work for the day on January 24, 2023; however, he received no response.

### H. January 25, 2023: Hayes is Terminated from Employment

On January 25, 2023, Hayes received a termination letter, therein effectuating his discharge on January 26, 2023. According to GSTek and Army employees, Hayes was terminated due to "absenteeism" concerns.

Although Hayes was terminated, the company asserted to the Louisiana Workforce Commission that Hayes has "resigned," which precluded Hayes from obtaining unemployment benefits.

## II. Hayes Attempts to Exhaust Administrative Remedies with Respect to Both the Army and GSTek

Given that it was the Army's refusal of full-time telework that led to GStek declining Hayes's full-time telework request, Hayes took the position that, while GStek was unequivocally his "payroll" employer, the Army nevertheless maintained sufficient control over the terms and conditions of Hayes' employment to qualify as a "joint employer" for purposes of the ADA. Consequently, and as exhaustively detailed throughout the first eleven (11) pages of Plaintiff's Original Complaint, Hayes and undersigned counsel engaged in extensive efforts to initiate the requisite Equal Employment Opportunity ("EEO") process necessary to exhaust disability-related claims against the Army. The EEO process was, needless to say, exceedingly frustrating, and undersigned counsel expresses his significant concern that the Army's/EEO's handling of Hayes's attempts to initiate the process against an alleged joint employer—a completely valid legal theory under appropriate facts and

8

circumstances—is altogether alarming. If the Army/EEO pushed back this hard on an attorney advancing a legal theory, one can only image how many *pro se* employees have been inappropriately advised as to the extent of their legal rights and protections. Hayes submits that whether an entity is properly considered a joint employer under the ADA, or any other anti-discrimination/retaliation statute of that matter, should be left to the courts to decide on facts and merits of the potential employment relationship at issue. Neither the Army nor any other federal employer should be able to avoid "joint employer" liability by simply instructing its agents or EEO contacts to refuse to log/process/investigate EEO complaints because they are made by a federal contractor's "payroll" employees. Questions of joint employment are difficult and fact-intensive, and they should be resolved on the underlying facts, not by a 12(b)(6) motion for failure to exhaust because the EEO refused to process the claim.

Notwithstanding the foregoing, because GStek is a private employer, Hayes had no issue exhausting his administrative remedies against the same through the U.S. Equal Employment Opportunity Commission ("EEOC"). Hayes filed a timely Charge of Discrimination on March 24, 2023, for which he received a Notice of Right to Sue on July 10, 2024.

**III.    Hayes Files Suit, the Army Moves for Dismissal, and GSTek Moves for a Judgment on the Pleadings**

Upon exhausting his administrative remedies with the EEOC and attempting to exhaust his remedies with the EEO, Hayes filed suit on October 8, 2024 in the United States District Court for the Western District of Louisiana, Lake Charles Division on the basis of federal question jurisdiction. ROA.7-32. Hayes's causes of action included claims for damages and other available relief pursuant to the anti-discrimination and anti-retaliation provisions of the Americans with Disabilities Act of 1990 and, with respect to the Army, the Rehabilitation Act. ROA.7-32.

The Army filed a 12(b)(6) Motion to Dismiss on December 16, 2024, asserting 1) it could not be sued under the ADA; 2) Hayes had failed to sufficiently allege a joint employment relationship; and 3) Hayes had failed to initiate EEO contact within forty-five (45) days of the Army's refusal to accommodate Hayes' telework request. ROA.57-79.

The district court granted the Army's Motion via Memorandum Ruling and Judgment dated January 17, 2025. ROA.133-41. Though the district court found that Hayes's Complaint did not assert ADA claims against the Army (but instead properly asserted Rehabilitation Claims against it), the district court found that 1) the Army was not a joint employer because "the only condition set by the army was that Hayes work at Fort Johnson" and 2) Hayes did not initiate EEO contact within forty-five (45) days of the Army's November 8, 2022 accommodation request

10

denial.[3] Though the district court's January 17, 2025 Judgment dismissing the Army is not currently on appeal, the district court did, in its Memorandum Ruling, state, "discriminatory/retaliatory termination cannot be a separate and distinct claim from failure to accommodate when the alleged unlawful termination is based on the alleged failure to accommodate." ROA.141. The district court relied on this incorrect statement of law in its subsequent ruling on GStek's Motion for Judgment on the Pleadings, which is squarely before this Court for review.

Relevantly here, GSTek filed a Motion for Judgment on the Pleadings on April 18, 2025, arguing: 1) GStek "accommodated" Hayes, such that Hayes could not proceed with an ADA failure-to-accommodate claim; 2) Hayes was not a "qualified individual with a disability," such that Hayes could not proceed with any ADA claim; and 3) because Hayes's disparate treatment and retaliation claims are "indistinguishable" from Hayes's failure-to-accommodate claim, both of those claims should, too, be subject to dismissal. ROA.153-66.

With respect to the first argument, GStek asserted that Hayes's claim was premised on a "misguided notion that he was entitled to full-time work—the accommodation of his choosing—and that part time remote work was unreasonable

---

[3] Hayes decided not to appeal this matter solely on the basis that he did not contact the EEO within forty-five (45) days of November 8, 2022. Hayes adamantly maintains his position that the Army qualifies as a joint employer given its ability to control significant terms and conditions of Hayes' employment, including job site/location, which, in this case, is the crux of the accommodation Hayes requested.

because it did not resolve the challenges he claims he faced while managing his disability and the essential functions of his position." ROA.158. It further argued that its provision of a modified work schedule was "well within the statutory criteria from reasonably accommodations," and that it was "evident that [Hayes]'s request for full time remote work was not reasonable." ROA.159.

GStek next argued that Hayes was not a "qualified individual with a disability." ROA.162. GStek's legal counsel first claims that Hayes's pleading, which highlights the fact that Hayes was able to perform the essential functions of the Level II Systems Administrator (IT Department) on an entirely remote basis for well over one year, is a "misleadingly limited time" from which Hayes seeks to establish himself as qualified. ROA.162. Then, without any assertion contained in any pleading, GStek asserts that "[d]uring that time, the essential functions of the job, which were dictated by the Army, were materially different than the remained of his employer after the Army required in-person service." ROA.162. It then, without any assertion contained in any pleading, asserted that Hayes "continued to struggle even after he was provided a reasonable accommodation," claiming that it is "undisputed that after February 2022, [Hayes] struggled with punctuality, absenteeism, and consistent availability for work." ROA.163. Then, without citing a single authority for support, argues, "[w]hether an individual continues to struggle with their disability after receiving a reasonable accommodation does no

retroactively nullify the reasonability of that accommodation." ROA.163. Finally, GStek argued that the ADA "defers to the employer to determine the essential job functions of an employee," that the Army "had significant control over the terms and conditions of [Hayes]'s employment," and "[t]o the extent that the Army expressed their need for in-person support, and [Hayes] was unable to meet that need, he was not able to perform the essential job functions of his position." ROA.163-64.

Finally, GStek argued "it is evidence from the pleadings that both" Hayes's discrimination and retaliation claim "are indistinguishable from, and based on, [Hayes]'s Failure to Accommodate Claim." ROA.164. It then summarizes the entirety of Hayes's Original Complaint to state, "[d]espite the separately captioned allegations, [Hayes]'s claims begin and end with his disappointment in the fact that he did not receive the accommodation of his choosing," ROA.164, and argues that "both [Hayes]'s discrimination and retaliation claims are inextricably intertwined with his failure to accommodate claim in a manner that this Court has previously deemed improper." ROA.165.

## IV.    The District Court Granted GSTek's Motion for Judgment on the Pleadings

After issuing its memorandum ruling granting judgment to GStek, the district court entered judgment on June 13, 2025. ROA.201-214.

First, the district court made a series of factual findings that do not appear anywhere in Hayes's Original Complaint. For example, the district court begins its

analysis by opining that "GStek had a contract with the Army who modified the terms and conditions, that were originally set due to the COVID-19 pandemic, to request that employees transition to in-person work at Fort Johnson, which in turn, made working full-time in person an essential characteristic of the job." ROA.207. Then, the district court found that "[p]ursuant to the contract, GStek was required to abide by all terms and conditions set by the army; failure to do so would likely result in a breach of contract and losing the contract." ROA.207. Based on this "finding," the district court went further to state that, "[o]ne can easily see that GStek defying the Army's denial of full-time telework would require GStek to modify certain duties, reassign existing employees, or hire new employees to perform the in-person work required by the Army," such that "[p]ermitting [Hayes] to work remotely full time, would have likely resulted in the loss of a contract with the Army and would have exceeded GStek's obligations under the ADA and RA's requirement for reasonable accommodation." ROA.207.

Next, the district court—again, without the support of any factual allegation pled in Hayes's Original Complaint—determined that, despite Hayes's plead assertion that the essential functions of his position did not change at any relevant time, "[t]he essential functions of [Hayes]'s job were materially different during that time than the essential functions of the job at issue in this case." ROA.208-09. The district court then noted its "question" as to whether Hayes is a "qualified

individual," but then appears to have resolved this question against Hayes to determine he was not, doubling down on its previous determinations that: 1) GStek's single offer of a modified work schedule was a "reasonable accommodation" under the circumstances; and 2) full-time in-person work was an essential function of Hayes's position. ROA.209.

Finally, the district court cited back to its previous memorandum ruling, declaring its note "correct" that "discriminatory/retaliatory termination cannot be separate and distinct from failure to accommodate when the alleged unlawful termination is based on the alleged failure to accommodate." ROA.210. In support of this position, the district court re-cited to a Kansas district court's holding in *Johnson v. Norton Cnty. Hosp.,* 550 F.Supp.3d 937, 961 (D. Kan. 2021). ROA.210. Thereafter, the court simply recites allegations in Hayes's Original Complaint and finds, without much analysis, that "[Hayes]'s discrimination and retaliation claims are intertwined with his failure to accommodate claim in a manner that Courts have previously deemed improper." ROA.213. It again, cites to *Johnson,* and concludes its analysis with "[b]because they are inextricably intertwined and not distinct claims, they are improper and subject to dismissal as well for the reasons stated herein." ROA.213.

## SUMMARY OF THE ARGUMENT

This Court must reverse and remand for further proceedings.

First and foremost, despite GStek seeking relief under Rule 12(c) of the Federal Rules of Civil Procedure, the district court made numerous factual findings, resolved numerous factual disputes, and drew numerous inferences *against* Hayes to find that GStek "reasonably" accommodated Hayes and that Hayes was not a "qualified individual" under the ADA. Hayes factually alleged that the essential functions of his Level II System Administrator (IT Department) remained the same during the entirety of his employment, such that in-person attendance was not actually an essential function at any time. That being said, however, the district court credited numerous contrary factual assertions of GStek to find that: 1) the Army's contract "mandated" full-time in person attendance; 2) in-person attendance was an "essential function" of the position; 3) GStek permitting Hayes to perform full-time telework would "breach" the Army-GStek contract and purportedly result in cancellation of the same; and 4) because Hayes could not perform full-time telework, he was not a "qualified individual" for purposes of the ADA. Given that Hayes plead that the Army never indicated that full-time telework was violative of any contract but was, instead, simply "not in the Army's best interest," and given that Hayes plead that GStek's own authority, Dismer, affirmed that the essential functions of Hayes's position could be performed 100% remotely, Hayes firmly submits that, at a bare minimum, a factual dispute exists as to the "essential functions" of the Level II System Administrator (IT Department) position at the times relevant to this suit. The

district court erred to the extent it refused to credit Hayes's well-plead factual assertions as true and otherwise resolved fact disputes and inferences against Hayes.

The district court similarly erred by disregarding numerous allegations contained in Hayes's Original Complaint to make a factual determination that GStek's provision of a hybrid telework schedule was a "reasonable accommodation" within the specific context of this case. Hayes's Complaint alleges that, upon GStek proffering an alternative, lesser accommodation than the full-time telework arrangement he requested in October 2022, Hayes attempted to utilize GStek's modified accommodation; however, it ultimately proved to be deficient and resulted in Hayes suffering from a psychological episode in mid-January 2023. Upon GStek's initial accommodation proving ineffective as of January 2023, Hayes re-engaged his interactive accommodation efforts with GStek in January 2023, not only re-urging his previous request for full-time telework, but requesting to delay his attendance of drill until his medical condition stabilized with the recently prescribed medication(s). GStek ignored both requests, and the district court impermissibly ignored the fact that GStek's initial accommodation proved to be ineffective and that GStek refused to meaningfully re-engage with Hayes after he reached out for additional assistance in January 2023. Given that the determination of whether an accommodation is "reasonable" is a fact-intensive inquiry, and given that the ADA does ***not*** alleviate an employer's obligation to engage, or re-engage, in the interactive

process as soon as it proffers its initial accommodation, the district court strayed afar from the confines imposed by Rule 12(c) and 12(b)(6) review to find Hayes failed to assert a facially plausible failure-to-accommodate claim.

Second, the district court erroneously disregarded this Court's holding in *Burton v. Freescale Semiconductor, Inc.*[4] to absolve GStek from liability under the ADA when it refused to grant Hayes's full-time telework request due to its purported contractual obligations to the Army. Again, there is not a single factual allegation contained in any pleading that establishes that the Army-GStek contract "mandated" full-time in-person attendance; rather, Hayes's Complaint states only that the Army declined the proposed full-time telework arrangement because it "wasn't in the Army's best interests,"—a statement that falls woefully short of the "undue hardship" employers must demonstrate to avoid ADA liability. ROA.20. To the extent the Army declined Hayes's full-time telework request without being able to establish that the same posed an "undue hardship" on the Army, the Army derogated from its own obligations under the Rehabilitation Act. Consequently, to the extent GStek acquiesced in the Army's disregard of Hayes's established rights and simply followed through with the Army's wishes, it can still be held liable for violating the ADA. GStek had an independent obligation to comply with the ADA, and, even if the Army-GStek contract contained a provision that violate(s) the ADA—which is

---

[4] 798 F.3d 222 (5th Cir. 2015).

not known at this time—the contractual obligation to discriminate would be unenforceable. The district court erred to the extent it impermissibly absolved GStek of liability, especially at the 12(c) stage.

Third, despite this Court's clear instruction that failure-to-accommodate and disparate treatment claims are wholly distinct claims, the district court impermissibly relied on nonbinding, inapposite caselaw to dismiss Hayes's disparate treatment and retaliation claim(s) because they "are inextricably interviewed and not distinct claims" from Hayes's failure-to-accommodate claim. In so doing, the district court ignored the binding precedent of this Court, and it must be reversed accordingly. Hayes facially plead, with the support of underlying facts, each of the elements required for a failure-to-accommodate, a disparate treatment (termination), and a retaliation (termination) claim, and the district court erred to the extent it found otherwise.

Due to the numerous, compounding legal errors committed with respect to Hayes's pending ADA claims, the district court's decision must be reversed in its entirety, and the matter must be remanded for further proceedings.

## STANDARD OF REVIEW

"A 12(c) motion for judgment on the pleadings is [ ] reviewed *de novo*." *Wetherbe v. Texas Tech University System,* 138 F.4th 296, 300-01 (5th Cir. 2025) (citation omitted). Rule 12(c) provides: "[a]fter the pleadings are closed—but early

enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).[5] A motion under this Rule "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (internal citations omitted)

The Court evaluates a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In considering a motion to dismiss for failure to state a claim, the Court must accept as true the well-pleaded factual allegations and any reasonable inference to be drawn from them, but legal conclusions are not entitled to the same assumption of truth. *Id.* A complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory. *Bell Atlantic Corp. v. Twombly*, 550 U.S.

---

[5] Although there is no specific language in Rules 7 or 12 of the Federal Rules of Civil Procedure stating when the pleadings close, most federal courts agree "pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, cross-claim, or third-party claim is interposed." *Kennedy v. Wells Fargo Bank, N.A.,* 2012 WL 13029372 at * 2 (W.D. Tex. Jul. 30, 2012). Here, Hayes filed an Original Complaint, and GSTek has filed an Answer. ROA.7-32, 81-95.

544, 562 (2007). In other words, the question is whether "in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Id.* (citations omitted).[6]

Although this framework is one-sided, the issue on a Rule 12(c) or Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims." *Sewell v. Monroe City School Board,* 974 F.3d 577, 582 (5th Cir. 2020) (citation omitted). The other side will have its say later. *Id.*

"A motion to dismiss for failure to state a claim is ***not*** meant to resolve disputed facts or test the merits of a lawsuit." *Sewell,* 974 F.3d at 581 (emphasis added). Rather, it tests whether, in plaintiff's best-case scenario, the complaint states a plausible case for relief. *Id.* Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977)

---

[6] Rule 12(b)(6) and 12(c) are virtually interchangeable. *Broughton v. Livingston Independent Sch. Dist.,* 2009 WL 10707489 (E.D. Tex. Jun. 11, 2009) (citing Hittner, Schwarzer, Tashima & Wagstaffe, RUTTER GROUP PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL–5th Cir. ED. § 9:319 (The Rutter Group 2009)). "Both permit challenges directed at the legal sufficiency of the parties' allegations. And, "[t]he standard for deciding a Rule 12(c) motion [for judgment on the pleadings] is the same as a Rule 12(b)(6) motion to dismiss." *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). The important difference between the motions relates to the time at which they should be filed. Rule 12(b)(6) is a pre-answer motion, which "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). On the other hand, Rule 12 (c) is a post-answer motion. A party may not move for judgment on the pleadings until after the pleadings are closed. Fed. R. Civ. P. 12(c).

In ruling on a 12(c) motion, the court must look only to the pleadings, *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002), and exhibits attached to the pleadings. *See Waller v. Hanlon*, 922 F.3d 590, 600 (5th Cir. 2019).

## ARGUMENT

### I. The District Court Incorrectly Dismissed Hayes's ADA Failure-to-Accommodate Claim Against GStek

In attacking Hayes' failure-to-accommodate claim, GSTek's counsel argued that "the reasonable accommodation was a modified work schedule that allowed [Hayes] to work remotely two to three days each week" ROA.159. It then, without any shred of evidence, argued—in connection with a 12(C) motion, *not* a motion for summary judgment—"[i]t is also evident that [Hayes]'s request for full time remote work was not reasonable,"[7] because, "[i]n February 2022, the Army modified the [terms] and conditions and requested in person support from GStek's employees," and "[i]f GStek had permitted [Hayes] to work remotely full time, it could have been found in breach of contract." ROA.159-60. GSTek then argued, without a shred of evidence—again, on a Rule 12(c) motion, not a motion for summary judgment—"[a]lso, GStek would have had to modify certain duties, reassign existing employees, or hire new employees to perform the in-person work required by the Army."

---

[7] ROA.159.

ROA.160. The district court accepted each of these arguments of GStek's legal counsel as undisputed statements of fact, looking far beyond the sufficiency of Hayes's Original Complaint and deviating from established legal procedure on multiple grounds. For the reasons that follow, the district court's granting of GSTek's Motion must be reversed.

### A. The District Court Impermissibly Disregarded and/or Discredited the Factual Allegations Pled in Hayes's Original Complaint

The district court's predominant legal error in this case is as glaring as it is pervasive throughout the court's Memorandum Ruling: the district court makes factual determinations, resolves factual disputes, and draws inferences against Hayes, none of which are based upon any factual allegation contained Hayes's Original Complaint.

#### 1. The District Court Impermissibly Disregarded Hayes's Factual Allegations to Determine 1) Full-Time In-Person Attendance Was an Essential Function of Hayes's Position; and 2) Hayes Was Not a "Qualified Individual" Subject to ADA Protection

Contrary to GStek's argument and the district court's finding, there is *no* assertion in Hayes' Complaint, much less any type of competent evidence, that Hayes's essential job functions as a Level II System Administrator (IT Department) actually changed in any way, at any time, from 2019 through his discharge in 2023. Consequently, the Court derogated from Rule 12(b) and 12(c) standards by resolving

facts and inferences against Hayes to find that that full-time, in-person attendance was an essential function of Hayes's job at any relevant time.

On an ADA claim, it is Hayes's burden to prove that he was qualified. *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017) (quoting *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007)). The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see Weber v. BNSF Ry. Co.*, 989 F.3d 320, 323 (5th Cir. 2021). To be considered a qualified individual, Hayes must show that: (1) he can perform the essential functions of the job despite his disability; or (2) if he is unable to perform the essential functions of the job, that a reasonable accommodation by the employer would enable him to perform those functions. *Weber*, 989 F.3d at 324*; Clark v. Charter Commc'ns, L.L.C.*, 775 F. App'x 764, 766 (5th Cir. 2019). "[T]hat is, an individual with handicaps is 'qualified' if []he can perform the essential functions of h[is] position with reasonable accommodation. If []he can perform these functions without reasonable accommodation, so much the better—he is, of course, still qualified." *Ward v. McDonald,* 762 F.3d 24, 27 (D.C. Cir. Aug. 12, 2014) (citing *Carr v. Reno*, 23 F.3d 525, 529 (D.C.Cir.1994)).

The essential functions of a job "are those that 'bear more than a marginal relationship to the job at issue.'" *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993), *cert. denied*, 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994)). Imperatively, ***whether a function is essential is a question of fact, not law***. *Kotaska v. Federal Express Corporation*, 966 F.3d 624, 628 (7th Cir. 2020) (citing *Brown v. Smith*, 827 F.3d 609, 613 (7th Cir. 2016))(emphasis added). Thus, while courts are obligated to consider the employer's judgment and to consider a job description as evidence of the job's essential functions, "the employer's judgment is not absolute." *Id.* (citing *Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 198 (7th Cir. 2011)). Other factors are relevant, including the amount of time spent on a function, the experience of those who previously or currently hold the position, and the consequences of not requiring the employee to perform the function. *See Credeur v. Louisiana*, 860 F.3d 785, 792 (5th Cir. 2017) (quoting 29 C.F.R. § 1630.2(n)(3)); *see Thompson*, 2 F.4th at 467. A highly fact-specific inquiry is necessary to determine a particular job's essential functions. *Cripe v. City of San Jose*, 261 F.3d 877, 888 n. 12 (9th Cir. 2001) (citing *Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 726 (6th Cir. 2000); *Ward v. Massachusetts Health Research Inst., Inc.*, 209 F.3d 29, 35 (1st Cir. 2000); *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1527, 1522 (11th Cir. 1997)). "Fact-

finders must determine whether a function is 'essential' on a case-by-case basis." *E.E.O.C. v. LHC Grp., Inc.,* 773 F.3d 688, 698 (5th Cir. 2014).

Taking the allegations of Hayes's Original Complaint as true and construing any inferences in his favor, as the Court must do on a Rule 12(c) motion, in-person attendance was not, at any time, an essential function of the Level II Systems Administrator (IT Department) position. Hayes alleged that began his employment with CG&E (the Army's previous IT contractor) as a Level II System Administrator (IT Department), and he successfully performed all essential functions of the position via full-time telework arrangement for nearly one (1) year. ROA.18, 28. Hayes then alleges that, irrespective of Hayes's employment automatically rolling from CG&E to GStek on approximately December 21, 2021 he nevertheless 1) remained "*in the same* Level II System Administrator (IT Department) position" and 2) "satisfactorily performed the essential functions" of this position, even under GStek's employ, for a period of three (3) months without issue. ROA.18, 28. Additionally, and as ignored by the district court, Hayes's Complaint states that, after GSTek received Hayes's full-time telework request in October 2022—several months into the Army-GStek contract—Dismer, the project manager, determined, as of October 27, 2022, that Hayes "***could effectively continue his current duties through remote work***" ROA.19-20. It was for this exact reason that Dismer himself—after reviewing Hayes's essential job functions and determining that

permitting Hayes to telework could allow him to perform all of the same without issue—escalated Hayes's full-time telework request to Army officials. ROA.20. Taking the factual allegations of Hayes's Complaint as true, as is required by Rule 12(c) and, in turn 12(6), the true "essential functions" of the Level II System Administrator (IT Department) position could easily be completed by way of a full-time telework arrangement, even after the Army contract transitioned from CG&E to GStek. ROA.28.

That being said, despite such a factual assertion appearing *nowhere* in Hayes's Original Complaint, the district court found, without any plead factual allegation or reviewing the purported contract(s) existing between GSTek and the Army during the relevant timeframe, that "GStek had a contract with the Army who modified the terms and conditions, that were originally set due to the COVID-19 pandemic, to request that the employees transition to in-person work at Fort Johnson, ***which, in turn, made working full-time in person an essential characteristic of the job.***" ROA.207. There is nothing in Hayes's Complaint that establishes, in any regard, that any contract(s) executed between the Army and GStek *mandated* "full-time in person" attendance as an "essential function" of the Level II Systems Administrator (IT Department) position at any time relevant to Hayes. To the contrary, the fact that GStek ultimately offered Hayes a hybrid schedule[8]—one which Hayes used to work

---

[8] ROA.20.

remotely two-to-three days per week[9]—completely negates any contention that any Army-GStek contract actually *mandated* "full-time in person" attendance at all. The district court's "finding" is even further contradicted by Hayes's well-plead allegation that, after Hayes requested an accommodation in the form of a full-time telework request, GStek, through Dismer, confirmed that Hayes could perform the essential functions of the position 100% remotely as of October 27, 2022. ROA.20.[10] Even further, Hayes plead that, although the Army ultimately denied the full-time telework request, the Army did ***not*** indicate that such a request violated any contract; rather, the only justification provided by the Army was that "it would not be in the best interest of the organization to allow full-time teleworking." ROA.20.

Taking the well-plead allegations of Hayes's Complaint as true, full-time on-site attendance was ***not*** an essential function of the Level II System Administrator (IT Department) position. As such, for purposes of a Rule 12(c) motion, Hayes was able to perform the essential functions of his position and, thus, was a "qualified individual" subject to ADA protection. ROA.18, 20, 28.

---

[9] ROA.20.

[10] Though the district court's previous finding that the Army was not Hayes's joint employer is not at issue on this appeal, the district court's assertion that the Army had the ability, through its contract with GStek, to alter essential functions of GSTek employees' positions (i.e., by making "working full-time in person an essential characteristic of the job," as the district court alleged) cannot be logically reconciled with the district court's finding that the Army lacked sufficient control over Hayes's daily job functions to qualify as a joint employer. Hayes adamantly maintains that the Army was his joint employer, and he forewent the previous appeal because only he did not initiate the EEO complaint within 45 days of November 8, 2022.

**2. The District Court Impermissibly Disregarded Hayes's Factual Allegations and Found that Permitting Full-Time Telework Would "Breach" the Army-GStek Contract and Result in Cancellation of the Same**

Notwithstanding the foregoing, the district court found another "fact" that Hayes did not plead: "[p]ursuant to the contract, GStek was required to abide by all terms and conditions set by the Army; *failure to do so would likely result in a breach of contract and losing the contract*." ROA.207. The district court then, within the same paragraph, opined that "[p]ermitting [Hayes] to work remotely full time, *would have likely resulted in the loss of a contract* with the Army and would have exceeded GSTek's obligations under the ADA and RA's requirement for reasonable accommodation." ROA.207.

First, the district court's notable use of the word "likely" in each of these sentences underscores the impropriety of the findings—these purported "facts" are not pled in Hayes's Complaint, nor is there any other pleading from which the Court could have established these assertions beyond dispute. Imperatively, neither the district court nor Hayes have seen the full substance of any purported contract between the Army and GStek; however, resolving any factual disputes and inferences in Hayes's favor, which must be done at this stage, the contract did ___*not*___: 1) mandate full-time, on-site attendance for GStek's Level II System Administrator (IT Department) employees; __or__ 2) permit the Army to cancel the entirety of the contract in the event GStek permitted Hayes to perform his duties on an entirely

remote basis. Indeed, construing reasonable inferences in Hayes's favor, the Army appears to have condoned the hybrid schedule GStek initially offered Hayes,[11] which resulted in Hayes working from home approximately half of each week for several weeks. Given that Hayes worked this hybrid schedule for approximately two (2) months, it is highly unlikely that the Army would have altogether cancelled a multi-thousand-dollar contract over an additional two days of remote-work per week for a single employee.[12]

Not only that, but even if the subject contract was found to have required GStek to engage in illegal behavior (i.e., to deny the provision of a "reasonable accommodation" in violation of the ADA) in order for GStek to comply with the contractual terms, that provision of the contract would be unenforceable as a matter of law, thus rendering it incapable of being breached in the alleged manner. *Burton* 798 F.3d 222 (citing *Panasonic Co., Div. of Matsushita Elec. Corp. of Am. v. Zinn,* 903 F.3d 1039, 1041 (5th Cir. 1990)).

The district court impermissibly interpreted and drew inferences from a contract neither it nor Hayes has seen, on a pleading-based motion, in direct contravention of Rule 12 standards. There is *no* factual assertion in Hayes's

---

[11] ROA.20.

[12] The Army's condonation of this hybrid schedule also indicates that the Army-GStek contract does not mandate full-time, in-person attendance as an essential function of a Level II System Administrator (IT Department) position.

Complaint which suggests that, had GStek permitted Hayes to work on a full-time remote schedule, such an accommodation would have resulted in a "breach" of its contract with the Army. Similarly, there is *no* factual assertion that suggests that, even in the event of a contractual breach, the Army would have altogether cancelled its contract with GStek, Inc. The district court erred to the extent it found to the contrary, and its decision should be reversed accordingly.

### 3. The District Court Impermissibly Disregarded Hayes's Factual Allegations and Found that GStek's Provision of the Hybrid Work Schedule was a "Reasonable Accommodation" that Satisfied its ADA Obligations Indefinitely

Under the ADA, an employer may not "discriminate against a qualified individual on the basis of disability in regard to job application procedures[;] the hiring, advancement, or discharge of employees[;] employee compensation[;] job training[;] and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination on the basis of disability includes "not making *reasonable accommodations* to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's business]." *Id*. § 12112(b)(5)(A) (emphasis added). The ADA specifies that " 'reasonable accommodation[s]' may include ... job restructuring, part-time or modified work schedules, reassignment to

a vacant position ... and other similar accommodations for individuals with disabilities." *Id*. § 12111(9).

The Supreme Court has established a two-step test for determining whether an accommodation is reasonable. *E.E.O.C. v. Methodist Hospitals of Dallas*, 62 F.4th 938, 943 (5th Cir. 2023) (citing *US Airways, Inc. v. Barnett,* 535 U.S. 391, 401-02, 405, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002)). First, the "plaintiff/employee need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases." *Id.* (citing *Barnett,* 553 U.S. at 401)(emphasis and citations omitted). If the plaintiff shows that a requested accommodation is reasonable in the run of cases, "the defendant/employer then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id.* (citing *Barnett,* 553 U.S. at 402)(citations omitted). If the plaintiff cannot demonstrate that a requested accommodation is reasonable in the run of cases, he or she "nonetheless remains free to show that special circumstances warrant a finding that" although "the ADA may not trump in the run of cases[ ], the requested 'accommodation' is 'reasonable' on the particular facts." *Id.* (citing *Barnett*, 553 U.S. at 405). Imperatively, deciding the reasonableness of a given accommodation not uncommonly involves context-based decisions ill-suited for summary judgment and even moreso ill-suited for a pleading-based motion arising under Rule 12(b) or 12(c). *See Dean v. University at Buffalo Sch. of Med. and*

*Biomed. Sciences*, 804 F.3d 178, 189 (2d Cir. 2015). Indeed, "the same accommodation might be appropriate for one disability and inappropriate for another," or appropriate for one employee or one workplace and not for another. *Owens v. Governor's Office of Student Achievement*, 52 F.4th 1327, 1335 (11th Cir. 2022) ("[T]he same disability may require different accommodations for different employees[.]"); *see also Turner v. Hershey Chocolate United States*, 440 F.3d 604, 614 (3d Cir. 2006); *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994); *McGregor v. Louisiana State Univ. Bd. of Supervisors*, 3 F.3d 850, 855 (5th Cir. 1993); *Frye v. Aspin*, 997 F.2d 426, 428 (8th Cir. 1993); *Fuller v. Frank*, 916 F.2d 558, 562 n.6 (9th Cir. 1990). Oftentimes, this kind of "fact-specific" question "must be resolved by a factfinder." *Noll v. IBM Corp.*, 787 F.3d 89, 94 (2d Cir. 2015).

### a. Hayes's Complaint Sufficiently Alleges that his Request for Full-Time Telework was Reasonable

As pled, Hayes initially requested an accommodation in the form of a full-time telework request,[13] which, though GStek determined would render Hayes able to perform all essential functions of his position,[14] GStek ultimately denied and countered with a hybrid telework/in-person schedule beginning in November 2022. ROA.19-20. Hayes attempted to work via the modified accommodation provided by

---

[13] ROA.18-19.
[14] ROA.20.

GStek over the course of approximately two (2) months; however, the proposed accommodation proved to be deficient and/or insufficient, resulting in Hayes experiencing a psychiatric episode and having to miss several consecutive days of work in January 2023 to seek mental health treatment. ROA.20-21. As further pled, Hayes communicated this mental relapse to GStek and, almost contemporaneously, re-urged his request to be permitted to work from home, in addition to a new request that he be permitted to delay attending drill until his mental health had stabilized. ROA.21. Further, as pled, GStek did not respond to any of Hayes's January requests or otherwise re-engage in the interactive process in any way. ROA.21. Instead, it opted to simply discharge Hayes's employment, less than one (1) week after he experienced a mental breakdown as a result of workplace overstimulation. ROA.21.

First and foremost, Hayes has sufficiently plead that the accommodation he initially requested in October 2022—full-time telework—was reasonable on its face. Not only had he performed the essential functions of the exact *same* position on a full-time remote basis for over one (1) year, and for several months under any existing Army-GStek contract, but the project manager of GStek determined that GStek could approve the request. ROA.19-20. Not only that, but, as pled, the requested accommodation was not violative of any contract, given that full-time in-person work was not *mandated* by the Army; rather, the Army simply noted that

permitting employees to work on a full-time remote basis was not in the Army's "best interest." ROA.20.

Even further, other employers, including government employers, have granted full-time telework requests, suggesting that such a request is reasonable. See, e.g., *Cormier v. McDonough,* 2021 WL 6498090 (S.D. Tex. Dec. 7, 2021) (granting full-time telework request to Department of Veterans' Affairs employee, among others, as an accommodation); *see also Ali v. Regan,* 111 F.4th 1264, 1279 (D.C. Cir. Aug. 9, 2024) ("Of course, remote work may well be a reasonable accommodation in many cases" and noting that a jury "could accept" the argument that "because Ali worked from home for several months in 2007, EPA's 2012 permanent telework offer must have been reasonable")(citing EEOC, Work at Home/Telework as a Reasonable Accommodation (Feb. 3, 2003), https://perma.cc/3CYS-RZ4A.); *Terry v. Perdue*, 2021 WL 3418124 (4th Cir. 2021) (USDA granted the employee's request for full-time telework). In fact, the Army itself has approved other employees' requests for full-time telework. See, e.g., *Phoenix v. Wormuth,* 2023 WL 9660884 (6th Cir. 2023)(ultimately approving full-time telework request for a civilian Army employee with PTSD).

In short, whether proposed by the employer or requested by the employee, the reasonableness of telework cannot be presumed. *Ali,* 111 F.4th at 1280. Instead, like many accommodation judgments, the reasonableness of a telework

accommodation turns on whether it will enable a specific employee "to perform the essential functions of [his] position" in a specific workplace, which will often be a fact-sensitive inquiry. 29 C.F.R. § 1630.2(o)(1)(ii); *see Owens*, 52 F.4th at 1335. Taking Hayes's well-plead allegations as true, his request for full-time telework was reasonable under the specific context of this case.

Despite the allegations contained in Hayes's Complaint, however, the district court nevertheless opined, "[o]ne can easily see that GStek denying the Army's denial of full-time telework would require GStek to modify certain duties, reassign existing employees, or hire new employees to perform the in-person work required by the Army." ROA.207. This is another inappropriate factual determination.

The district court appears to attack the "reasonableness" of Hayes's full-time telework request by referring to caselaw holding "the ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *Thompson,* 2 F.4th at 467 (citation omitted). That being said, however, Hayes's Complaint alleges the complete opposite of the district court's finding: given Dismer's assertion that, as of October 27, 2022, all essential functions of the Level II System Administrator (IT Department) could be performed remotely,[15] there is nothing pled, nor is there anything to suggest, that GStek would

---

[15] ROA.20.

actually have to modify any duty, reassign any existing employee, or hire a new employee to perform Hayes's work. Taking the allegations of Hayes's Complaint as true, the essential functions of his job can be performed entirely remotely; the Army just decided it was not in the Army's "best interest"[16] for it to be done so.

Whether in-person attendance is an essential function of the Level II System Administrator (IT Department) position is a fundamentally disputed fact, premised upon resolution of several of underlying fact disputes. For purposes of Rule 12(c), upon taking the allegations of Hayes's Complaint as true, in-person attendance was **not** an essential function of Hayes's position, and it would not have been necessary GStek to modify duties, nor would it have been necessary for GStek to reassign or hire additional employees, in order to permit Hayes to work remotely full-time.

### b. Under the Facts of this Case, Hayes's Request for Full-Time Telework was Not Simply His "Preferred" Accommodation

In the employment context, "[w]hen a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." *E.E.O.C. v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009). That being said, as noted by this Court, the Appendix to the ADA regulations explains:

> The accommodation, however, does not have to be the "best" accommodation possible, ***so long as it is sufficient to meet the job-***

---

[16] ROA.20.

*related needs of the individual being accommodated* .... [T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.

*Id.* (citing 29 C.F.R. pt. 1630, App., § 1630.9)(emphasis added). The ADA does not require the employer to provide the "best" accommodation or the employee's preferred accommodation; it requires only that the employer provide an accommodation that "*is sufficient to meet the job-related needs of the individual being accommodated*." *Agro Distribution*, 555 F.3d at 471. For this reason, the precise "contours of the interactive process must be determined on a case-by-case basis." *Baily v. Bd. of Comr's of La. Stadium and Exposition. Dist.,* 484 F.Supp.3d 346 (E.D. La. Sept. 4, 2020)(citation omitted).

Under the full constellation of circumstances and facts, a reasonable jury[17] could conclude that GStek ultimately failed in its obligations to engage in the interactive process required under the ADA and to truly "reasonably accommodate" Hayes, given that Hayes ultimately informed GStek that the original accommodation it provided—the hybrid schedule—*was unsuccessful and requested additional accommodation(s)*. *See, e.g., Colwell v. Rite Aid Corp.,* 602 F.3d 495, 507 (3rd Cir. 2010) (finding a reasonable jury could find the company liable when it stopped responding after the employee indicated that the proposed accommodation may not

---

[17] Hayes demanded a trial by jury of all claims so triable in his Original Complaint. ROA.7, 32.

be reliable and was only a temporary solution); *Johns v. Brennan,* 761 Fed. Appx. 742 (9th Cir. 2019) ("Although the Postal Service was not necessarily obligated to give Johns the accommodation she requested, it was obligated to reengage in the interactive process when Johns requested a different accommodation")(citing *Humphrey v. Mem'l Hosp. Ass'n,* 239 F.3d 1128, 1138 (9th Cir. 2001) ("[T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation"). Thus, as demonstrated by the continued issues Hayes experienced post-November 2022, the part-time remote work proved to be insufficient to meet Hayes's specific job-related needs. *Agro Distribution*, 555 F.3d at 471, and, thus, became an "unreasonable" accommodation as it specifically applied to Hayes. That being said, both GStek and the district court ignore the factual allegations in Hayes's Complaint detailing Hayes's efforts to re-engage GStek upon realizing that the initial accommodation it provided did not work. They similarly ignore GStek's wholesale refusal to re-engage in accommodation communications in January 2023, despite Hayes's requests for additional assistance. ROA.20-22. Doing so constitutes reversible error.

### c. Hayes's Complaint Sufficiently Alleges that Accommodating His Full-Time Telework Request Did Not Impose Undue Hardship on the Army or GStek

Hayes acknowledges that an employer faced with a demand for reasonable accommodations may deny the request on the ground that the accommodation would create an "undue hardship." *Picard v. St. Tammany Parish Hosp.,* 611 F.Supp.3d 608, 622 (E.D. La. Apr. 7, 2009).[18] Because undue hardship is an affirmative defense, *Riel v. Electronic Data Systems Corp.*, 99 F.3d 678, 682 (5th Cir. 1996), an employer seeking summary judgment on that ground has the heavy burden of establishing that every reasonable jury would find that the requested accommodation would pose an undue hardship. *Picard,* 611 F.Supp.3d. at 622. In addition, "[c]ourts are somewhat skeptical of hypothetical hardships that an employer thinks might be caused by an accommodation that never has been put into practice." *Id.* (citing *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 135 (1st Cir. 2004)).

Hayes's Complaint facially alleges that, in approximately November 2022, COR "refused to honor his telework accommodation request. Moreover, "[a]t no time did the Army engage in the required interactive process with [Hayes], nor did

---

[18] An "undue hardship" is "an action requiring significant difficulty or expense, when considered in light of" (i) the nature and cost of the accommodation; (ii) the overall financial resources of the facility or facilities involved in the provision of the accommodation, the number of persons employed at the facility, the effect on expenses and resources, and the impact on operation of the facility; (iii) the overall size and resources of the entity; and (iv) the type of operations of the entity, including the composition and geographic separateness. 42 U.S.C. § 12111(10)(A)-(B).

it ever indicate, in any way, why accommodating the request would pose an undue burden on it any way. To the contrary, [Hayes] had already shown that he would be able to fully perform the essential functions of the position upon being allowed to work remotely, and the Department of the Army had already shown that it was not unreasonable or an undue burden to permit [Hayes] to do so, seeing as it had all of its employees working remotely from, at the very least, December 2021 through February 2022." ROA.25. Here, because Hayes successfully performed the essential functions of his position without issue, as a contract employee for the Army, for well over one (1) year on a remote-only basis, and because GStek confirmed, as of October 2022, that he could perform the essential functions of his position by returning to full-time-remote status, Hayes has plausibly alleged that permitting Hayes to return to full-time-remote work would not have resulted in an "undue hardship" to either the Army or GStek.

With respect to the Army, whether an employee's requested accommodation is "in the best interest"[19] of an employer is *not* the standard under the ADA: the ADA provides "that an employer who fails to make 'reasonable accommodations to the known physical or mental limitations of an [employee] with a disability' discriminates *'unless'* the employer 'can demonstrate that the accommodation

---

[19] As alleged, the "Army's reason for declining Hayes's full-time telework request was an unqualified statement that it 'would not be in the best interest of the organization to allow full-time teleworking." ROA.20.

would impose an ***undue hardship*** on the operation of [its] business.'" *US Airways, Inc.*, 535 U.S. at 395 (emphasis in original) (quoting 42 U.S.C. § 12112(b)(5)(A)). An "undue hardship" is "an action requiring significant difficulty or expense." 42 U.S.C. § 12111(10)(A). There is no factual allegation even remotely suggesting that permitting Hayes to perform his duties on a full-time remote basis—just as he had done for the past year without issue—would pose an "undue hardship" on the Army. As such, absent the required showing of significant difficulty or expense, the Army could not legally deny a perfectly legitimate and reasonable accommodation request for someone like Hayes.

Notwithstanding the foregoing, GStek's argument that "full time remote work was not an option due to the Army's decision" and that "a hybrid work schedule was the highest level of accommodation possible without defying the Army's directive and jeopardizing GStek's contract and relationship with the Army" is without merit in light of this Court's ruling in *Burton Freescale Semiconductor, Inc.,* 798 F.3d 222 (5th Cir. 2015). There, a staffing agency—Manpower—argued that, because it contractually had "no choice but to comply" with the client's—Freescale Semiconductor's—demand that the plaintiff be terminated, it could not be held liable for violating the ADA. *Id.* at 229. This Court explicitly disagreed, finding that "a purported contractual obligation to fire an employee on a discriminatory basis is no defense," and that "[a]s an employer, Manpower had an independent obligation to

comply with the ADA, and a contractual obligation to discriminate would be unenforceable." *Id.* (citing *Panasonic,* 903 F.3d at 1041).

To the extent the Army's permission for Hayes to resume working on a full-time remote basis did not result in an "undue hardship," which is not an allegation contained in any pleading before the district court, there is no legally valid basis for the Army rejecting Hayes's request, especially in light of the fact that it had permitted its IT employees to perform full-time remote duties for over one (1) year without issue.[20] To the extent GStek participated in the discrimination or knew or should have known of the Army's discrimination but failed to take corrective measures within its control, it is just as liable for the failure to reasonably accommodate. *See Burton,* 798 F.3d at 228-29.

## II. The District Court Erroneously Considered Hayes's Failure-to-Accommodate, Disparate Treatment, and Retaliation Causes of Action as "Indistinguishable Claims"

GStek argued that Hayes's "claims of discrimination and retaliation against him based on his disability are indistinguishable, and based on, [Hayes]'s failure to accommodate claim against GStek." ROA.164-65. The district court agreed with GStek and held that Hayes's failure-to-accommodate claim, disparate treatment

---

[20] The fact that Hayes did not contact the EEO within 45 days of the Army's refusal to grant the full-time remote work accommodation request does *not* mean that the Army did not violate the Rehabilitation Act; it simply means that Hayes cannot recover any damages/relief against the Army for its decision due to an exhaustion failure.

claim, and retaliation claim "are inextricably intertwined and not distinct claims," such that Hayes's disparate treatment (discrimination) and retaliation claims "are improper and subject to dismissal as well." ROA.209-13. For the reasons that follow, the district court committed reversible error.

## A. Disparate Treatment and Failure-to-Accommodate Claims are Wholly Distinct Claims

Contrary to the district court's finding, this Court has plainly and repeatedly recognized that, "although their methods of proof are related," disparate treatment claims and failure-to-accommodate claims *are wholly distinct from one another.* *Julian v. DeJoy,* 2024 WL 4433076 at * 4 (5th Cir. 2024) (citing *LCH Grp., Inc.,* 773 F.3d at 70 n. 6); *see also Dunlap v. Liberty Natural Products, Inc.,* 878 F.3d 794, 798 (9th Cir. 2017) ("We have recognized that a failure-to-accommodate claim is 'analytically distinct from a claim of disparate treatment or impact under the ADA.'").

The ADA forbids certain types of disability discrimination: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA then defines "discriminate against a qualified individual on the basis of disability" to include disparate treatment *and* failure to accommodate: "not making reasonable

accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee ....” 42 U.S.C. § 12112(b)(5)(A).

A claim for *disparate treatment* based on disability under the ADA (and the Rehabilitation Act, with immaterial nuances) requires Hayes to prove “(1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability.” *LHC Grp.*, 773 F.3d at 697 (citing *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). Disparate-treatment claims under the ADA allege that the employer discriminated against the employee by *acting* in a discriminatory manner. *Exby-Stolley v. Bd. of Cnty. Comm’rs,* 979 F.3d 784, 796 (10th Cir. 2020). It thus necessarily follows that a plaintiff must establish an employment *action* as part of an ADA disparate-treatment claim. *Id.* (citations omitted). Additionally, this claim, *unlike* a failure-to-accommodate claim, requires showing of discriminatory intent. *Mullin v. Secretary, U.S. Department of Veterans Affairs,* —F.4th—, 2025 WL 22677816 (11th Cir. 2025) (citing *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007)). “[A]n employer's failure to reasonably accommodate a disabled individual itself constitutes discrimination under the ADA .... There is no additional burden ....”); *Exby-Stolley,* 979 F.3d at 797.

A claim for *failure to accommodate* under the ADA (and the Rehabilitation Act, generally) requires proof (1) plaintiff was a qualified individual with a disability; (2) defendant was aware of his disability; and (3) defendant failed to accommodate his disability reasonably. *E.E.O.C. v. AutoZone*, 809 F.3d 916, 919 (7th Cir. 2016); *Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013). So two separate claims are possible under each statute. To be actionable, a failure to accommodate must affect the terms, conditions, or privileges of employment, ***but it is unnecessary to show a separate "adverse employment action" in a failure to accommodate case.*** *Jones v. Blue Cross Blue Shield of Louisiana,* 2018 WL 618599 (M.D. La. Jan. 29, 2018) (citing *Picard,* 611 F.Supp.2d at 620; *Exby-Stolley,* 979 F.3d at 795)("we have also made clear that a ADA failure-to-accommodate claim does not contain an adverse-employment-action requirement"). In contrast to disparate treatment claims, failure-to-accommodate claims do not alleged that the employer *acted*, but rather that the employer *failed* to act. *Exby-Stolley,* 979 F.3d at 796 (citing 42 U.S.C. § 12112(b)(5)(A)) That is, failure-to-accommodate claims concern an omission rather than an action; such claims allege that the employer discriminated against the employee by not satisfying an affirmative, ADA-created duty to provide reasonable accommodations. *Id.* (citing *US Airways,* 535 U.S. at 397). And, because failure-to-accommodate claims concern discrimination in the form of a failure to meet an affirmative obligation, there is no *action* that must be

shown to have been taken with any particular intent. *Exby-Stolley,* 979 F.3d at 797 (citing Kevin W. Williams, The Reasonable Accommodation Difference: The Effect of Applying the Burden Shifting Frameworks Developed Under Title VII in Disparate Treatment Cases to Claims Brought Under Title I of the Americans with Disabilities Act, 18 Berkeley J. Emp. & Lab. L. 98, 152 (1997) (stating that, in contrast to disparate-treatment claims, failure-to-accommodate claims require no showing of discriminatory intent; rather, for failure-to-accommodate claims, "the 'elusive factual question' to be determined is whether the employer complied with its statutory obligation to provide reasonable accommodation")).

Given the different types of adverse action and intent at issue between the various ADA causes of action, Hayes readily pled plausible claims under the ADA on three (3) different, independent bases: 1) failure-to-accommodate; 2) disparate treatment, based on his termination; and 3) retaliation, based on his termination. The district court erred to the extent it found otherwise.

## B. The District Court's Reliance on *Johnson* is Wholly Misplaced

In dismissing Hayes's ADA disparate treatment and retaliation claims—both of which challenge the legality of Hayes's termination—the district court relied on *Johnson v. Norton County Hospital,* which it summarized as holding that "discriminatory/retaliatory termination cannot be a separate and distinct claim from failure to accommodate when the alleged unlawful termination is based on the

alleged failure to accommodate." ROA.201.[21] Reliance on *Johnson* constitutes reversible error.

*Johnson*, first and foremost, is a non-binding opinion from a Kansas district court. Not only is Johnson non-binding, but the factual and procedural circumstances underlying the court's opinion render the decision wholly inapposite to Hayes's claims.

In *Johnson,* the plaintiff asserted that the defendant *retaliated* against her for requesting an accommodation by "putting her on a rigid schedule that did not accommodate her needs" and "reducing her full-time position to a part-time schedule," i.e., by refusing to reasonably accommodate her.  550 F.Supp.3d at 961. In other words, the plaintiff alleged that the employer retaliated against her for requesting an accommodation by failing to accommodate her. The district court found these particular allegations to be "superfluous in light of [the plaintiff's] failure-to-accommodate claim, citing cases that held "a 'failure to accommodate claim' cannot serve as an adverse action for an ADA retaliation claim because it merely restates an underlying failure to accommodate claim.'" *Id.* (citing *Bess v. District of Columbia*, 2020 WL 4530581, *4 (D.D.C. Aug. 6, 2020) (denying leave to amend complaint to add retaliatory failure-to-accommodate where claim was duplicative of failure-to-accommodate claim and motive was irrelevant); *Harris v.*

---

[21] Citing 550 F.Supp.3d 937, 961 (D. Kan. 2021).

*Carrier Corp.*, 2017 WL 4037658, at *6 (S.D. Ind. Sept. 13, 2017) ("[D]istrict courts across the Seventh Circuit have recognized that "[a] 'failure to accommodate' cannot serve as an adverse action for an ADA retaliation claim because it merely restates an underlying failure to accommodate claim," because otherwise "almost every failure to accommodate claim would be simultaneously a retaliation claim.") (quoting *Moore-Fotso v. Bd. of Educ. of the City of Chicago*, 211 F. Supp. 3d 1012, 1037 (N.D. Ill. 2016) (collecting cases)).

Neither *Johnson,* nor any case cited by the *Johnson* Court, actually holds that "discriminatory/retaliatory ***termination*** cannot be a separate and distinct claim for failure to accommodate when the alleged unlawful termination is based on the alleged failure to accommodate," as the district court suggests. ROA.210. Contrarily, the only principle for which *Johnson* and its predecessor cases stand is that a "failure-to-accommodate" cannot be the "adverse employment action" giving rise to an ADA retaliation claim—in other words, an employee cannot claim that an employer retaliated against him for requesting an accommodation by refusing to grant the accommodation.

Imperatively, and as ignored by both GStek and the district court, after making its initial finding, the *Johnson* Court immediately went on to state, "[t]hus, ***the only viable ADA retaliation claim set forth in the pretrial order is the one based on defendant's*** <u>***termination***</u> ***of plaintiff's employment***." *Id.* (emphasis added). The

employer argued that it terminated the plaintiff's employment because she refused to follow the work schedule that her supervisors developed—eerily similar to GStek arguing that Hayes could not follow the hybrid schedule it developed, despite he and his physician's request for a full-time remote schedule—and the district court found that the plaintiff had adduced probative evidence of pretext and denied summary judgment on the termination-based-ADA retaliation claim. *See id.* at 961-62. *Johnson* fully **supports** Hayes's position that he can bring forth a valid retaliation claim attacking GStek's decision to terminate his employment on January 25, 2023.

Put simply, the district court's reliance on *Johnson* to dismiss Hayes' disparate treatment and retaliation claims—both of which target Hayes's termination—is wholly improper. Hayes did ***not*** allege that GStek "retaliated" against him for requesting an accommodation by denying his full-time telework accommodation (i.e., by refusing to accommodate him). To the contrary, in the explicitly enumerated ADA/RA Retaliation Cause of Action Section of his Original Complaint, Hayes alleged: 1) he engaged in protected activity by requesting an accommodation; 2) he was terminated; and 3) "but for [Hayes's] request for an accommodation (i.e., protected activity), [Hayes] ***would not have been discharged from his employment***." ROA.30. Hayes did ***not***, as the *Johnson* plaintiff, assert that GStek retaliated against him for requesting an accommodation by denying his accommodation request: Hayes's retaliation claim is wholly independent of Hayes's

failure-to-accommodate claim and is premised upon GStek's decision to terminate

Hayes's employment on January 25, 2023.

### III. Hayes's Original Complaint Asserts Plausible Claims for Failure-to-Accommodate, Discriminatory Discharge (Disparate Treatment), and Retaliatory Discharge Against GStek

Hayes's Complaint alleges that he suffers from and has been medically

diagnosed with Autism, Major Depressive Disorder, and Social Anxiety Disorder,

which are physiological and/or psychological conditions that, at a bare minimum,

substantially limit Hayes's brain function, which is a major life activity. ROA.23-

24. For purposes of 12(c), Hayes's disabled status is undisputed. This establishes the

first analytical prong of both Hayes's failure-to-accommodate and disparate

treatment claim.

Second, for the reasons set forth *supra*, Hayes's Complaint plausibly alleges

that he was a "qualified individual," i.e., that he was able to perform the essential

functions of the Level II System Administrator (IT Department) position, with or

without reasonable accommodation. ROA.17-18, 24, 175-76. Though Hayes

plausibly alleges that in-person work was not an essential function of the position,

Hayes notes that, as reflected by the physician's note Hayes provided to GStek, and

as further corroborated by Hayes's successful performance of his role for several

years, permitting Hayes to perform full-time telework would have easily rendered

Hayes able to perform the essential functions of his position. ROA.24-25.

Accordingly, Hayes has plausibly alleged information necessary to satisfy the second analytical prong of both Hayes's failure-to-accommodate and disparate treatment claim.

Third, Hayes plainly asserts that he submitted a Reasonable Accommodation Request Form on October 12, 2022, requesting an accommodation in the form of full-time remote work (i.e., a reversion to his pre-February 2022 work environment). ROA.19. The Complaint further details that, in connection with this request, Hayes provided documentation from his treating physician, which medically recommended that Plaintiff be able to perform full-time remote work to reduce the overstimulation caused by in-person work environments. ROA.19. In so doing, Hayes notified GSTek of his disabling conditions and resulting limitations such that, at all relevant times, GSTek had actual knowledge of Plaintiff's medical conditions and diagnoses, resulting limitations, and the resultant accommodation request. ROA.24-25. In so doing, Hayes has established the third prong of his failure-to-accommodate claim, as well as that he engaged in "protected activity" sufficient to establish the first prong of his ADA retaliation claim.

Fourth, for the reasons set forth herein, Hayes plausibly alleged that GStek, not only by denying his initial request for full-time telework, but by hereafter failing or otherwise refusing to re-engage accommodation discussions after Hayes indicated that the initial accommodation was insufficient in January 2023, GStek failed to

provide a reasonable accommodation, under the relevant facts, in violation of the ADA. This, in turn, establishes the final prong of Hayes's failure-to-accommodate claim. Hayes's Complaint sets forth a plausible failure-to-accommodate claim, and the district court must be reversed accordingly.

Failure-to-accommodate notwithstanding, Hayes further pled that he was notified of his termination on January 25, 2023. ROA.28, 30. Given that a termination easily surmounts this Court's standard for "adverse employment action," and given that it necessarily surmounts the relaxed "materially adverse" standard applicable to ADA retaliation claims, Hayes has alleged sufficient facts to establish both the third prong of his disparate treatment claim and the second prong of his ADA retaliation claim.

Next, with respect to his discriminatory discharge claim, Hayes plead that GStek terminated his employment "on account of his disability," not only by alleging that Hayes was terminated almost immediately after his psychological episode—i.e., "an event that highlighted his ADA/RA-protected disability," but that some of the "absenteeism" was completely attributable to his disabling condition. ROA.28. The approximately one-week temporal proximity between Hayes's psychological episode on January 16, 2023 and his termination on January 25, 2023 is sufficient, under this Court's precedent, to constitute a *prima face* claim that he was terminated for ADA-violative reasons. See *Gosby v. Apache Industrial Services,*

*Inc.,* 30 F.4th 523, 527 (5th Cir. 2022)(finding one-week proximity between employee's on-site diabetic episode and her termination sufficient to constitute a *prima facie* case that she was terminated in violation of the ADA). In even further factual support of causation, Hayes alleged that his absences—all of which were tied directly to his disabling condition—were a motivating factor in his termination. ROA.28-29. This, again, is sufficient *prima facie* evidence that Hayes's disability motivated GStek's decision to discharge his employment. See, e.g., *Freeman v. Savard Labor & Marine, Inc.,* 2021 WL 4230547, * 4 (W.D. La. Jun. 27, 2023). Hayes pled all required elements of a discriminatory discharge claim—which, again, is not "inextricably" rooted in GStek's failure to accommodate his full-time telework request—and the district court must be reversed accordingly.

Finally, in addition to pleading that Hayes engaged in protected activity— first in October 2022, and then again beginning on approximately January 18, 2023[22]— and was terminated on January 25, 2023, Hayes alleged the requisite causal connection necessary to establish his *prima facie*, terminated-based retaliation claim. While a mere three (3) months passed between Hayes's initial accommodation request and GStek's decision to discharge him, the decision to discharge actually came approximately one (1) week after Hayes attempted to re-engage the interactive process—by indicating to GStek that its original accommodation was insufficient,

---

[22] ROA.21.

re-urging his request for full-time telework, for medical leave, and to delay attending drill—and GStek deciding to simply foregoing those options and terminate him. This one-week temporal proximity, standing alone, is sufficient for Hayes to establish his *prima facie* retaliation claim. *See Lyons v. Katy Independent School District,* 964 F.3d 298 (5th Cir. 2020). As such, Hayes has plausibly alleged that he engaged in protected activity and was subjected to materially adverse action within a sufficiently close time period, as is required to plausibly set forth an ADA retaliation claim. The district court committed reversible error to the extent it found otherwise.

## CONCLUSION

At minimum, at the Rule 12(b)(6) and/or 12(c) stage, a court's role is to infer, through "the allegations of the complaint as a whole," whether the plaintiff has pled sufficient facts that if true, would entitle him to relief. *Strife v. Aldine Independent School District*, 2025 WL 1416073 (5th Cir. 2025). Hayes's allegations as to his failure-to-accommodate claim, disability discrimination claim, and retaliation claim readily clear this bar. As such, the district court's grant of judgment on the pleadings must be reversed in its entirety, and Hayes's case must be remanded for further proceedings.

/s/ James E. Sudduth, III
JAMES E. SUDDUTH, III

55

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that on September 22, 2025, this Brief was served via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov, upon all registered CM/ECF users in this appeal.

Counsel further certifies that on September 22, 2025, the foregoing motion was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov.

Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ James E. Sudduth, III
JAMES E. SUDDUTH, III

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 12,801 words, excluding the parts exempted by Rule 32(f); and (2) the typeface and type style requirements of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word (the same program used for the word count).

/s/ James E. Sudduth, III
JAMES E. SUDDUTH, III