# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 25-30392

ALBERT M. HAYES,

*Plaintiff-Appellant,*

v.

GSTEK, INCORPORATED,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA, LAKE CHARLES IN CASE NO.
2:24-CV-1376, HONORABLE JAMES DAVID CAIN, JR., U.S. DISTRICT JUDGE

## BRIEF FOR DEFENDANT-APPELLEE

ROSS M. RALEY
STOCKWELL SIEVERT LAW FIRM
Chase Bank Building
127 West Broad Street, 4th Floor
Lake Charles, Louisiana 70601
(337) 493-7298

WILLIAM PALMER
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, Virginia 23510
(757) 624-3000

*Attorneys for Defendant-Appellee*

CP COUNSEL PRESS    (800) 4-APPEAL • (814168)

## CERTIFICATE OF INTERESTED PERSONS

Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Plaintiff-Appellant**

   Albert M. Hayes

2. **Defendant-Appellee**

   GStek, Incorporated

3. **Counsel for Plaintiff-Appellant**

   James E. Sudduth, III
   Kourtney L. Kech
   SUDDUTH & ASSOCIATES, LLC
   1109 Pithon Street
   Lake Charles, Louisiana 70601

4. **Counsel for Defendant-Appellee**

   William M. Palmer
   KAUFMAN & CANOLES, P.C.
   150 W. Main Street, Suite 2100
   Norfolk, Virginia 23510

   Ross M. Raley
   STOCKWELL, SIEVERT, VICCELLIO, CLEMENTS &
   SHADDOCK, L.L.P.
   127 W. Broad Street, 4th Floor
   Lake Charles, Louisiana 70601

i

DATED:     October 22, 2025

By:   */s/ William M. Palmer*
Ross M. Raley (LA Bar No. 33323)
STOCKWELL SIEVERT LAW FIRM
127 W. Broad Street, 4th Floor
Chase Bank Building
Lake Charles, Louisiana 70601
T:  (337) 493-7298
F:  (337) 312-2937
rmraley@ssvcs.com

William M. Palmer (*pro hac vice*)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, Virginia 23510
T:  (757) 624-3000
F:  (888) 360-9092
william.palmer@kaufcan.com

*Counsel for Appellee GStek, Incorporated*

**STATEMENT REGARDING ORAL ARGUMENT**

The factual circumstances underpinning Appellee's arguments are straightforward and limited in scope, and the primary issue on appeal is whether the lower court derogated from the type of judicial review permitted for motions brought pursuant to Fed. R. Civ. P. 12(c). Appellee does not believe that oral argument is necessary to resolve the matters at issue in this appeal; however, to the extent the Court finds that oral argument may benefit the Court, Appellee is happy to oblige.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF AUTHORITIES ...........................................................................vi

JURISDICTIONAL STATEMENT .....................................................................1

STATEMENT OF ISSUES ...............................................................................1

STATEMENT OF THE CASE.............................................................................2

       District Court Proceedings.........................................................................7

SUMMARY OF ARGUMENT ...........................................................................15

ARGUMENT ...............................................................................................16

    I.     Standard of Review .........................................................................16

    II.    The District Court Correctly dismissed Hayes's ADA Failure
        to Accommodate Claim...................................................................19

        A.    The District Court correctly assessed the
            implausibility of Hayes's Failure to Accommodate
            Claim...................................................................................19

            1.    Hayes received a reasonable accommodation ...............22

            2.    Hayes did not sufficiently allege that he was a
                qualified individual with a disability.............................30

            3.    Hayes is not entitled to his preferred
                accommodation..........................................................34

            4.    Hayes has misapplied the undue hardship
                standard.....................................................................37

    II.    The District Court accurately identified that Hayes's failure to
        accommodate, disparate treatment, and retaliation claims are
        indistinguishable..................................................................40

        A.    The District Court adhered to the law of the case ...................40

1.  Hayes waived his opportunity to object to the law of the case ...............................................................42

B.  Hayes's claims are indistinguishable from each other .............43

CONCLUSION ...................................................................................................47

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Addy's Burger, L.L.C. v. Paradigm Inv. Grp., LLC,*
   CV 17-2400, 2018 WL 2569928 (E.D. La. June 4, 2018) ...............................18

*Ali v. Regan,*
   111 F.4th 1264 (D.C. Cir. Aug. 9, 2024) ......................................................27

*Bayou Steel Corp. v. Nat'l Union Fire Ins. Co.,*
   487 Fed. Appx. 933 (5th Cir. 2012) ..............................................................42

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...........................................................................17, 18, 21

*Bess v. Dist.,*
   No. 19-3152 (JEB), 2020 WL 4530581 (D.D.C. Aug. 6, 2020) .......................44

*Burton v. Freescale Semicondctor, Inc,*
   798 F.3d 222 (5th Cir. 2015) ........................................... 2, 37-38, 39

*Cascio v. State Farm Fire & Cas. Co.,*
   No. CIV.A. 11-1699, 2011 WL 5439331 (E.D. La. Nov. 9, 2011) ..................17

*Collins v. Morgan Stanley Dean Witter,*
   224 F.3d 496 (5th Cir. 2000) ..........................................................................18

*E.E.O.C. v. Methodist Hospitals of Dallas,*
   62 F.4th 938 (5th Cir. 2023) ...........................................................................28

*EEOC v. Agro Distrib., LLC,*
   555 F.3d 462 (5th Cir. 2009) .....................................................................23, 34

*EEOC v. Chevron Phillips Chem. Co., LP,*
   570 F.3d 606 (5th Cir. 2009) ..........................................................................23

*EEOC v. LHC Grp., Inc.,*
   773 F.3d 688 (5th Cir. 2014) .....................................................................23, 31

*Elliot v. Foufas,*
   867 F.2d 877 (5th Cir. 1989) ..........................................................................15

*Feist v. Louisiana,*
   730 F.3d 450 (5th Cir. 2013) ..........................................................................22

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2022) ...............................................................................17

*Griffin v. United Parcel Serv., Inc.*,
  661 F.3d 216 (5th Cir. 2011) ..........................................................................23, 34

*Guerra v. Castillo*,
  82 F.4th 278 (5th Cir. 2023) ...............................................................................17

*Harris v. Carrier Corp.*,
  No. 1:15cv01952-JMS-MJD, 2017 WL 4037658 (S.D. Ind. Sept. 13, 2017) ..44

*In re Deepwater Horizon*,
  710 F.3d 338 (5th Cir. 2013) ...............................................................................18

*Jackson v. Blue Mt. Prod. Co.*,
  761 F. App'x 356 (5th Cir. 2019).........................................................................15

*Johnson v. Norton Cnty. Hosp.*,
  550 F. Supp.3d 937 (D. Kan. 2021) ...........................................................*passim*

*Lindquist v. City of Pasadena*,
  669 F.3d 225 ........................................................................................................41

*Medical Ctr. Pharm. v. Holder*,
  634 F.3d 830 (5th Cir. 2011) ..........................................................................42, 43

*Moore-Fotso v. Bd. of Educ. of the City of Chicago*,
  211 F.Supp. 3d 1012 (N.D. Ill. 2016).................................................................44

*Norris v. Hearst Tr.*,
  500 F.3d 454 (5th Cir. 2007) ...............................................................................18

*R2 Inv. LDC v. Phillips*,
  401 F.3d 639 (5th Cir. 2005) ...............................................................................18

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
  635 F.3d 757 (5th Cir. 2011) ...............................................................................18

*Terwilliger v. Reyna*,
  4 F.4th 270 (5th Cir. 2021)...................................................................................21

*Thompson v. Microsoft Corp.*,
  2 F.4th 4607 (5th Cir. 2021 .................................................................................32

*United States v. Castillo*,
  179 F.3d 321 (5th Cir. 1999) ..........................................................................42, 43

vii

*United States v. Lee*,
   358 F.3d 315 ...................................................................................42

*US Airways, Inc. v. Barnett*,
   535 U.S. 391 (2002) ...................................................................28, 29

*Wetherbe v. Tex. Tech. Univ. Sys.*,
   138 F.4th 296 (5th Cir. 2025) ................................................. 16-17

*Wright v. Bd. of Comm'rs of the Capital Area Transit Sys.*,
   551 F. Supp. 3d 607 (La. M. D. 2021) .......................................22, 25


**Statutes & Other Authorities:**

28 U.S.C. § 1291 ...........................................................................1

28 U.S.C. § 1331 ...........................................................................1

29 U.S.C. § 701 ....................................................................1, 3, 19

42 U.S.C. § 12101 .................................................................1, 3, 19

42 U.S.C. § 12111(8) ................................................................30, 31

42 U.S.C. § 12111(9)(B)................................................................25

42 U.S.C. § 121111(10) .................................................................39

42 U.S.C. § 12112(b)(5)(A) ............................................................28

Fed. R. Civ. P. 12(b)(6)............................................................17, 18

Fed. R. Civ. P. 12(c)................................................................*passim*

## JURISDICTIONAL STATEMENT

The Complaint contains multiple causes of action related to GStek, Inc. ("GStek"), the Appellee: a single count of Failure to Accommodate/Engage in the Interactive process pursuant to 42 U.S.C. § 12101 *et seq.* and 29 U.S.C. § 701 *et seq.*; a single count of Disability Discrimination pursuant to 42 U.S.C. § 12101 *et seq.* and 29 U.S.C. § 701 *et seq.*; and a single count of Retaliation pursuant to 42 U.S.C. § 12101 *et seq.* and 29 U.S.C. § 701 *et seq.* The District Court accordingly had subject matter jurisdiction under 28 U.S.C. § 1331. The District Court dismissed the Complaint with prejudice, under Fed. R. Civ. P. 12(c), by Memorandum Order dated June 12, 2025. ROA. 214–15. Judgment was entered the same day, reflecting the District Court's ruling. ROA. 214–15. Appellant filed a timely Notice of Appeal on July 10, 2025, ROA. 214–15, challenging the District Court's dismissal. This Court has jurisdiction of this appeal from the final decision of the District Court. 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

This Appeal presents three issues:

1. Whether the District Court impermissibly derogated from the scope of judicial review permitted by Fed. R. Civ. P. 12(c) by making factual findings, credibility determinations, and drawing inferences against Hayes,

as opposed to taking the allegations of Hayes's Original Complaint as true and resolving all inferences in Hayes's favor;

2. Whether the District Court impermissibly derogated form the scope of judicial review permitted by Fed. R. Civ. P. 12(c) by making a factual determination that full-time, in person attendance was an essential function of the Level II system Administrator (IT Department) position and that Hayes was not otherwise a "qualified individual";

3. Whether the District Court erroneously disregarded this Court's holding in *Burton v Freescale Semicondctor, Inc*, 798 F.3d 222 (5th Cir. 2015), to absolve GStek from liability for relying on discriminatory instructions provided by the Army;

4. Whether the District Court erroneously disregarded this Court's precedent and relied upon inapposite caselaw to find that Hayes's ADA disparate treatment and/or retaliation claims were not distinct claims from Hayes's ADA failure-to-accommodate claim.

## STATEMENT OF THE CASE

GStek, Incorporated ("GStek" or "Appellee") is a domestic corporation and federal contractor that provides Information Technology ("IT") support to the Department of the Army Network Enterprise Center ("NEC") at Fort Johnson (Polk). Appellant, Albert M. Hayes ("Hayes" or "Appellant"), is a former

employee of GStek. In the Complaint Hayes alleged that during the course of his employment, GStek failed to accommodate his disability, discriminated against him based on his disability, and retaliated against him, all in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. and the Rehabilitation Act, 29 U.S.C. § 701. Complaint, ROA.7-32.

Hayes began his employment with GStek after the company was awarded the contract from the Army in December 2021. Complaint ¶ 14, ROA.7-32. Hayes was employed by GStek from December 15, 2021, until January 25, 2023, as a Level II System Administrator in the IT department. Complaint ¶¶ 14, 37, ROA.7-32. He was specifically assigned to service the U.S. Army at Fort Johnson (Polk). GStek is aware that Hayes used to work for the prior contract holder, but cannot account for the nature of his employment or performance prior to December 15, 2021.

At the start of his employment with GStek, Hayes worked remotely due to the COVID-19 pandemic and the federally mandated work from home orders at that time. In February 2022, the Army, whom Hayes has acknowledged "had the express authority to control and set various terms and conditions of GStek employee's [sic] employment at the Fort Polk/Fort Johnson base, including whether or not they could telework", Complaint ¶52, ROA.7-32, sought to return

to their pre-pandemic arrangements and required GStek's employees, including Hayes, to return to work in person.

In October 2022, approximately eight months after the Army's requested transition to in-person services, Hayes submitted a Reasonable Accommodation Request form, with supporting medical documentation for several mental health diagnoses. Complaint ¶¶ 20-21, ROA.7-32. GStek was unaware of these diagnoses or their purported effects on his ability to work until he submitted the Reasonable Accommodation Request on October 12, 2022. Complaint ¶¶ 16-18, 20, ROA.7-32. In light of those diagnoses and the purported effects of his medications, Hayes requested permission to work remotely. Complaint ¶¶ 20–21, ROA.7-32.[1]

Upon receipt and initial review, GStek was inclined to grant the request, but was not able to unilaterally approve this job restructuring and modified schedule without the Army's approval. Complaint ¶¶ 23, 25, ROA.7-32. After consulting with the Army officials overseeing the Fort Johnson (Polk) contract, on November 8, 2022, the Army determined that it "would not be in the best interest of the organization to allow full-time teleworking" and denied Plaintiff's request to work remotely full time. Complaint ¶ 26, ROA.7-32 Given the Army's position against

---

[1] Notably, neither the allegations in the Complaint, nor Hayes's physician specified that he requested full time remote work. Complaint ¶¶ 20–21, ROA.7-32. The physician stated that Hayes would benefit from being able to work from home as much as possible. ROA.183–89. Hayes's request for full time remote work was certainly his preference, but not a directive or recommendation from his physician.

Plaintiff working remotely full-time, GStek's hands were tied. Nonetheless, GStek sought to honor its initial representation to Plaintiff and accommodate him by permitting him to work from home part-time. Complaint ¶27, ROA.7-32. In accordance with both his physician's recommendation and the instructions from the Army, part time remote work was "as much as possible" given the circumstances.

For three months, from November 2022 until January 2023, Plaintiff maintained a hybrid-work schedule—working remotely two to three days per week and worked the remaining days in person. Complaint ¶28, ROA.7-32. During that time, Plaintiff continually struggled with attendance, communication, and responsiveness, even while working remotely. Complaint ¶28, ROA.7-32.

Plaintiff and his supervisor maintained an ongoing text message dialogue about his persistent attendance issues, but Plaintiff did not improve.[2] Complaint ¶¶ 33,35,36, ROA.7-32. Within that dialogue, Hayes acknowledged his repeated attendance issues, which included a series of no call no shows and referenced

---

[2] In both the Complaint and the Appellant's brief, Hayes indicates that there were discussions regarding his physician's recommendation that he be permitted to "delay attending drill until a later date in order to give [Hayes's] treatment more time to provide further relief from anxiety." Complaint ¶ 33, ROA.7-32. GStek is unaware of what this may be referencing, and assumes it has something to do with his separate military affiliation. Hayes's employment with GStek did not involve drill of any kind.

discussions with his medical provider about a leave of absence. Nonetheless, Hayes expressed his desire to get used to his medication and get back to work.[3]

Ultimately, the combination of Hayes' communication and attendance issues grew to a level of untenable and inexcusable absenteeism in violation of GStek's well-established attendance policy. Complaint ¶¶ 37, 38, ROA.7-32. As a result, GStek discharged Plaintiff from his employment effective January 26, 2023. Complaint ¶ 27, ROA.7-32

In both the Complaint and the Appellant's Opening brief, Hayes argues at length that he was improperly hindered from administratively exhausting his claims against the Army. GStek does not maintain a position on Hayes's exhaustion efforts, other than noting that Hayes did not appeal the District Court's decision to dismiss the Army from the case, which would have provided him an opportunity to assert his procedural and substantive claims against the Army before this Court.

Nonetheless, GStek acknowledges that Hayes was able to administratively exhaust his claims against GStek before the EEOC without issue. Hayes filed a

---

[3] The surrounding context in these text messages suggests that Hayes was hesitant to take a leave of absence due to a lack of "short term leave." Either way, Hayes never actually inquired about or requested a medical leave of absence. He also did not provide any substantiating documentation from his physicians regarding his allegedly worsening condition, despite his previously demonstrated knowledge of GStek's accommodation policy and procedures.

Charge of discrimination on March 24, 2023, and received a Notice of Right to Sue on July 10, 2024. Complaint ¶¶ 3, 4, ROA.7-32.

**District Court Proceedings**

After exhausting his administrative remedies as to Gstek, Hayes proceeded to file suit against GStek and the Army on October 8, 2024 in the United States District Court for the Western District of Louisiana, Lake Charles Division. Complaint, ROA.7-32. Through his aforementioned claims, Hayes sought damages and other available relief pursuant to the Americans with Disabilities Act, and the Rehabilitation Act for the Army. Complaint, ROA.7–32.

In support of his failure to accommodate claim, Hayes alleged in a conclusory fashion that he was "objectively qualified for his position" and proceeded to cite a time period that includes his employment with his prior employer. Complaint ¶ 47, ROA.7–32. He labeled his October 18, 2022, request a "reasonable accommodation pursuant to both the ADA and RA", based in large part on the supporting documentation provided by his physician indicating that remote work, without a specified frequency, would reduce his overstimulation and "permit [him] to continue performing the essential functions of his position". Complaint ¶ 49, ROA.7–32. Hayes went on to acknowledge the Army's "express authority to control and set various terms and conditions of GStek employee's employment at the Fort Polk/Fort Johnson base, including whether or not they

could telework". Complaint ¶ 52, ROA.7-32. Despite these concessions and the physician's open ended recommendation, Hayes claimed that the hybrid-work schedule was not a reasonable accommodation because his condition did not improve. Complaint ¶ 59, ROA.7-32. Hayes concluded his attempt to support his Failure to Accommodate claim by surmising that the alleged failure to accommodate led to his January 2023 absences and his eventual termination. Complaint ¶ 20, ROA.7-32.

As for his disability discrimination claim, he restated several of his earlier conclusory assertions regarding his diagnoses, qualifications, and disability status. Hayes argued that the temporal proximity between an "event that highlighted his ADA/RA-protected disability" and his termination, and any reliance on absences stemming from his disability, demonstrate that GStek terminated his employment because of his disability. Complaint ¶ 70, ROA.7-32.

Finally, in support of his Retaliation claim, Hayes walked through his October 2022 accommodation request and linked the Army's denial and GStek's accommodation to the alleged retaliation through a circular and somewhat redundant string of allegations. Namely, Hayes alleged that the purported adverse employment action, termination, "is driven entirely from [the Army and GStek's] collective failure and/or refusal to implement the very accommodation Plaintiff requested". Complaint ¶ 81, ROA.7-32. Hayes continued the circular line of

8

argument and overlapping references to his failure to accommodate claim when alleging causation by claiming that, "[b]ut for [his] request for accommodation, Plaintiff would not have been discharged from his employment." Complaint ¶ 82, ROA.7-32.

On December 16, 2024, the Army filed a Motion to Dismiss. The District Court granted the Army's Motion in a Memorandum Ruling and Judgment on January 17, 2025. ROA.133-141. The District Court found that the Army was not Hayes's joint employer and that Hayes failed to administratively exhaust his claims against the Army. ROA.133-141. Additionally, the District Court identified a pleading error in Hayes's disability discrimination claim, and noted that, as a matter of law, "discriminatory termination/retaliatory termination cannot be a separate and distinct claim from failure to accommodate when the alleged unlawful termination is based on the alleged failure to accommodate." ROA.133-141. (citing *Johnson v. Norton Cnty. Hosp.*, 550 F. Supp.3d 937, 961 (D. Kan. 2021)). Hayes now claims that this is an incorrect statement of law, but Hayes did not file a timely appeal when the District Court made this determination and made it the law of the case.

On April 18, 2025, GStek filed a Motion for Judgment on the Pleadings and Memorandum in Support arguing that: (1) Hayes received a reasonable accommodation; and (2) Hayes's discrimination and retaliation claims are

9

indistinguishable extensions of his failure to accommodate claim. ROA.146–48, 149–67. Within the analysis demonstrating that Hayes received a reasonable accommodation, GStek asserted that, as a matter of law, Hayes was not entitled to the accommodation of his choosing, full-time remote work, and explained how the accommodation provided was reasonable as it was the highest level of accommodation possible in accordance with both the Army's instructions and the advice from Hayes's treating physician. ROA.149–67. GStek also noted that the inconsistent manner in which Hayes asserted his failure to accommodate and disability discrimination claims in the Complaint brought his status as an otherwise qualified person with a disability into question. As this is an essential element, it did not appear that he had sufficiently plead all of the *prima facie* elements of his ADA claims. More specifically, in the Complaint Hayes asserted that he "successfully performed all of his essential job functions from 2019 through February 2022, during which time he performed the same remotely." Complaint ¶ 47, ROA 7-32. In the Memorandum in Support of the Motion for Judgement on the Pleadings, GStek clarified that this inappropriate time frame includes two years that Hayes did not work for GStek, and a year of work for GStek during the temporary COVID-19 work from home orders that inevitably changed in 2022, pursuant to the Army's authority and control. ROA.149–67, GStek also identified the misalignment between Hayes's implication that GStek failed to accommodate

simply because his condition did not improve, and the relevant legal standard that gives deference to the employer's determination of the essential job functions and assessment of whether an accommodation is reasonable. ROA.149–67.

Finally, in the Memorandum in Support of the Motion for Judgment on the Pleadings, GStek argued that Hayes's disability discrimination, failure to accommodate, and retaliation claims were impermissibly intertwined, based on the District Court's prior determination in its dismissal of the Army. ROA.149–67. To demonstrate the need for the District Court to extend its prior ruling on Hayes's indistinguishable claims, GStek walked through several examples in which Hayes's circular claims revealed that they were in fact based on the same underlying action, the alleged failure to accommodate. GStek specifically cited the following quotes from Hayes's Complaint that demonstrate the overlapping nature of his allegations and how the discrimination and retaliation claims circle back to his Failure to Accommodate claim.

Regarding Plaintiff's Discrimination claim:

• "Plaintiff was terminated for absenteeism; however, all of the absences - most of which happened just a week prior – occurred as a direct function of Plaintiff's known disabling conditions, combined with Defendants' collective refusal and/or failure to provide the reasonable telework accommodation Plaintiff requested." ECF No. 1 ¶ 70.
• "[T]o the extent Defendant(s) rely upon any of Plaintiff's medically related absences which stem, from whole or in part, Plaintiff's medical conditions as exacerbated by Defendants' failure and/or refusal to reasonably accommodate Plaintiff's telework

11

request, the decisions to discharge Plaintiff was driven exclusively by Plaintiff's disabling condition in violation of the ADA and/or RA." ECF No. 1 ¶ 72.

Regarding Plaintiff's Retaliation claim:

• "Within approximately (3) months of Plaintiff's initial accommodation request, Plaintiff was altogether terminated from his employment . . . . the reason proffered for Plaintiff's termination, i.e., absenteeism, is driven entirely from Defendants' collective failure and/or refusal to implement the very accommodation Plaintiff requested." ECF No. 1 ¶ 81.
• "But for Plaintiff's request for an accommodation (i.e., protected activity), Plaintiff would not have been discharged from his employment." ECF No. 1 ¶ 82.

ROA.149–67. GStek merely highlighted the overlapping and inextricably intertwined nature in which these claims were presented, and asserted that the persuasive legal basis that the District Court had already applied in favor of the Army's dismissal should be extended to the claims asserted against GStek.

On June 13, 2025, the District Court issued its Memorandum ruling granting GStek's Motion for Judgment on the Pleadings. ROA.201-213. In its opinion, the District Court summarizes the relevant standard of review for a 12(C) Motion for Judgment on the Pleadings, specifically stating that in order to survive a 12(C) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" ROA.201-213

The District Court proceeded to acknowledge and analyze several facts asserted in the Complaint and conceded in the briefing. For example, the District

12

Court acknowledged that full-time in person work was an essential characteristic of Hayes's job based on the following undisputed facts: (1) the Army controlled the terms and conditions of Hayes's employment at Fort Johnson/Polk; (2) the Army requested in person service after the pandemic; and (3) the Army denied the prospect of full time remote work when it was proposed. ROA.201-213 Likewise, the District Court acknowledged the apparent contractual relationship between GStek and the Army, and the potential for breach if GStek were to disregard the previously conceded authority that the Army possessed in the contractual relationship. ROA.201-213

The District Court went on to apply the relevant ADA standard for accommodation, and specifically noted the well-established limitations of the standard, including that Hayes was not entitled to his preferred accommodation. ROA.201-213. Based on the facts alleged, the District Court was also able to identify that Hayes's request for full time remote work exceeded the employer's obligations under the ADA, and that Hayes had been reasonably accommodated through the hybrid-work schedule provided by GStek. ROA.201-213

The District Court went on to analyze the contradictory facts alleged by Hayes to determine whether Hayes had sufficiently plead that he was a qualified individual with a disability under the ADA. The District Court correctly identified that Hayes's status as a qualified individual with a disability was in question

13

because of the misleading time frame offered—a majority of which was for a different employer— to demonstrate his ability to perform the essential functions of the job. ROA.201-213. Moreover, it is undisputed that that the Army exercised its authority to change the terms and conditions of his employment in February 2022, when it expressed its desire for in-person support. Accordingly, the District Court was left with a limited time frame with which to determine whether Hayes was able to perform the essential functions of his position with, or without, an accommodation. Even when this time frame was construed in Hayes's favor, the District Court was left with a series of undisputed attendance issues and a self-admission from Hayes that the hybrid-work schedule was not enough to allow him to meet expectations and perform the essential functions of his position. Complaint ¶¶ 58, 59, ROA.7-32.

Finally, in a legally sound adaptation of persuasive legal precedent and an extension of the law of the case, the District Court highlighted the several aforementioned provisions of Hayes's Complaint that conflate the basis and nature of his discrimination, retaliation, and failure to accommodate claims. ROA.201-213. Ultimately, the District Court determined Hayes's claims are inextricably

14

intertwined and not distinct from one another in a manner that the District Court had previously deemed legally improper.[4]

## <u>SUMMARY OF ARGUMENT</u>

The District Court properly held that "GStek made a reasonable accommodation per ADA and RA standards"; "[Hayes] could not perform the essential functions of his position, with or without accommodation"; and "[Hayes's] discrimination and retaliation claims are intertwined with his failure to accommodate claim" in an impermissible manner. ROA.201-213. As such, this Court should uphold the District Court's Judgement and Order on GStek's Motion for Judgment on the Pleadings, dismissing the lawsuit with prejudice.

The District Court properly assessed that GStek accommodated Hayes in the form of a hybrid-work schedule, based on the undisputed facts in the Complaint, including the recommendation from his treating physician. While Hayes continues to emphasize that his request for full time remote work was denied, the District Court correctly acknowledged and upheld the well-established principle that Hayes was not entitled to the accommodation of his choosing. *See Jackson v. Blue Mt. Prod. Co.*, 761 F. App'x 356, 360 n.14 (5th Cir. 2019).

---

[4] This is also an extension of the well-established legal standard, cited by the District Court, that a complaint must be stated with enough clarity to enable a court or opposing party to determine whether a claim is sufficiently alleged. ROA.201–13 (citing *Elliot v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)).

The District Court also correctly noted the inconsistencies and inaccuracies in the Complaint, specifically regarding the timeframe alleged to establish Hayes as a qualified individual with a disability. Even when construed in his favor, the District Court could readily identify how the inaccurate and misleading facts plead in the Complaint undermine Hayes's attempt to sufficiently assert the *prima facie* elements of his failure to accommodate and discrimination claims.

Finally, the District Court properly identified the overlapping intertwined facts and allegations asserted in support of Hayes's discrimination, retaliation, and failure to accommodate claims. The circular nature of these allegations led the District Court to make the appropriate, and legally supported, determination that the claims are indistinguishable and insufficiently plead. Moreover, it is noteworthy that the District Court's decision regarding the indistinguishable claims is an extension of its similar decision in the Memorandum Ruling dismissing the Army, that in turn became the law of the case. To that end, Hayes did not appeal or dispute this determination when it became the law of the case, and has consequently waived the right to do so now.

## ARGUMENT

### I.    Standard of Review

The standard of review is well settled. On appeal, "[a] 12(c) motion for judgment on the pleadings is [ ] reviewed de novo." *Wetherbe v. Tex. Tech. Univ.*

16

*Sys.*, 138 F.4th 296, 300 (5th Cir. 2025). A motion pursuant to Rule 12(c) for judgment on the pleadings may be brought "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c).[5] A motion brought pursuant to Rule 12(c) is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Cascio v. State Farm Fire & Cas. Co.*, No. CIV.A. 11-1699, 2011 WL 5439331, at *1 (E.D. La. Nov. 9, 2011) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2022)).

"[T]he 12(c) standard is the same as that applied to Rule 12(b)(6). To survive a Rule 12(c) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Guerra v. Castillo*, 82 F.4th 278, 284-285 (5th Cir. 2023) (internal quotation marks and citation omitted). Even with the facts alleged are accepted as true, the Supreme Court has noted a distinction between conceivable and plausible claims. In order to survive GStek's Motion for Judgment on the Pleadings, Hayes's Complaint must state a claim that is not just conceivable, but is also plausible on its face. See *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Hayes's Complaint does not meet either

---

[5] While the Federal Rules do not define when pleadings are closed. The parties appear to agree that GStek filed its motion in a timely manner, after the pleadings were closed.

standard. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558.

Additionally, under Rule 12(c), "[a]ny documents that are referred to in the plaintiff's complaint that are central to the plaintiff's claims are considered to be part of the pleadings and are properly considered when reviewing a … motion for judgment on the pleadings." *Addy's Burger, L.L.C. v. Paradigm Inv. Grp., LLC*, CV 17-2400, 2018 WL 2569928, at *3 (E.D. La. June 4, 2018) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). The standard for dismissal under Rule 12(c) is the same as that for dismissal under Rule 12(b)(6). *In re Deepwater Horizon*, 710 F.3d 338, 343-44 (5th Cir. 2013). "[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). Courts may consider documents of which they take judicial notice, including documents available on government agency websites. See *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (holding that a court on a 12(b)(6) motion may rely on "matters of which a court may take judicial notice"); *R2 Inv. LDC v. Phillips*, 401 F.3d 639, 640 n.2 (5th Cir. 2005) ("[A] court may also take

18

judicial notice of documents in the public record . . . and may consider such documents in determining a motion to dismiss.").

## II.     The District Court Correctly dismissed Hayes's ADA Failure to Accommodate Claim

GStek's Motion for Judgment on the Pleadings was based on Plaintiff's admissions and the undisputed facts contained in his Complaint. The District Court assessed these facts under the relevant standards and properly determined that the Complaint failed to state a plausible claim under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.,* and the Rehabilitation Act ("RA"), 29 U.S.C. § 701 *et seq.* To the extent that any inferences were made, they were reasonable, evident on the face of the pleadings, and well within the scope of the acceptable standard of review.

### A.     The District Court correctly assessed the implausibility of Hayes's Failure to Accommodate Claim.

In an attempt to rebut the District Court's appropriate exercise of judgment and discretion, Hayes appears to overlook, or attempts to distract this Court from, his own admissions and inconsistent statements in his Complaint. There are several noteworthy undisputed facts from Hayes's Complaint and Exhibits—or alternatively within the appropriate scope of judicial notice— that led the District Court to its proper determination and dismissal. The following list of facts are all

19

undisputed and clearly demonstrate that Hayes received a reasonable accommodation:

- Hayes was an employee of GStek from December 15, 2021 until January 25, 2023, as a Level II System Administrator in the IT department. Complaint ¶ 14, 37, ROA.7-32.
- Prior to his employment with GStek, Hayes worked for another company that provided similar services to the Army at Fort Johnson (Polk). Complaint ¶¶ 12, 13, ROA.7-32.
- "Due to COVID-19, [the Army and GStek] collectively permitted [Hayes] to work from home from the date of his hire through approximately February 2022". Complaint ¶ 15, ROA.7-32.
- In February 2022, the Army sought to return to their pre-pandemic arrangements and required GStek's employees, including Hayes, to return to work in person. Complaint ¶ 16, ROA.7-32.
- Hayes's essential job functions revolved around servicing the Army. "[T]he Army provided the place of work for [Hayes], and . . . had the express authority to control and set various terms and conditions of GStek employee's employment at the Fort Polk/Fort Johnson base, including whether or not they could telework." Complaint ¶ 52, ROA.7-32.
- On October 12, 2022, [Hayes] submitted a Reasonable Accommodation Request form requesting *remote work* due to his medical conditions and the effects of his evening medications." Complaint ¶ 20, ROA.7-32. (emphasis added)
- "In support of [Hayes's] Reasonable accommodation request, on October 18, 2022, [Hayes] Plaintiff's treating physician wrote a letter medically recommending that, due to Plaintiff's disabling conditions, Plaintiff be permitted to perform *remote work* . . . ." Complaint ¶ 21, ROA.7-32. (emphasis added)
- The supporting documentation from Hayes's physician expressly stated that Hayes would "benefit from being able to work from home *as much as possible*."
- Upon initial review of Hayes's request, GStek told Hayes that it was inclined to grant the request, but GStek needed to acquire approval from the Army officials overseeing the Fort Johnson (Polk) contract. Complaint ¶¶ 22–25, ROA.7-32.

- On November 8, 2022, the Army determined that it "would not be in the best interest of the organization to allow full-time teleworking" and denied Hayes's request to work remotely full time. Complaint ¶ 26, ROA.7-32.
- Despite the Army's refusal, GStek allowed Hayes to work a hybrid-work schedule—"working from home two (2) to (3) three days per week and working the remaining days [in person] at Fort Polk/Fort Johnson, Louisiana facility". Complaint ¶ 28, ROA.7-32.
- During that time, Hayes was unable to maintain the hybrid-work schedule. He continually struggled with attendance, communication, and responsiveness, even while working remotely. Complaint ¶¶ 28–29, ROA.7-32.
- Hayes and his supervisor maintained an ongoing dialogue about his persistent attendance issues, but Hayes did not improve. Complaint ¶¶ 33, 35, 36, ROA.7-32.
- Hayes never submitted additional medical documentation in support of an additional accommodation.
- Ultimately, these issues persisted and "[Hayes] was terminated due to 'absenteeism' concerns". Complaint ¶ 38, ROA.7-32.

The District Court assessed these facts under the standard of review and determined that Hayes's Complaint was facially improbable. Contrary to the undertones and repeated emphasis of the Appellant's brief, the above standard of review is not a forgone conclusion in favor of all plaintiffs merely because well-pleaded facts are accepted as true. Hayes must allege claims that are not just conceivable, but plausible on their face. See *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021). By this token, the District Court could appropriately determine that the

inferences relied upon by Hayes are not reasonable, or alternatively, the reasonable inferences drawn from the facts do not support Hayes's claims.

Hayes is purportedly under the impression that there are inferences that the District Court should have drawn in his favor. However, even when accepted as true, in this case, the facts alleged do not lend themselves to reasonable inferences that support plausible claims. "[W]hile the court must accept well-pleaded facts as true, it will not strain to find inferences favorable to the plaintiff." *Wright v. Bd. of Comm'rs of the Capital Area Transit Sys.*, 551 F. Supp. 3d 607, 611 (La. M. D. 2021) (internal citations and quotations omitted). Likewise "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* The bulk of the facts alleged in support of Hayes's failure to accommodate claim either lend themselves to the reasonable inference that he received a reasonable accommodation, or state conclusory allegations in support of an implausible outcome.

### 1.    Hayes received a reasonable accommodation

To state a claim of failure to accommodate, a plaintiff must show "(1) the plaintiff is a 'qualified individual with a disability'; (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013) (footnote

22

omitted). "An employee who needs an accommodation because of a disability has the responsibility of informing [his] employer." *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009). If the "disability, resulting limitations, and necessary reasonable accommodations[] are not open, obvious, and apparent to the employer, the initial burden rests upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (quoting *Chevron Phillips*, 570 F.3d at 621). "The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *Id.* (quoting *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009)) (emphasis added). Similarly, "[w]hile the ADA does require an employer to reasonably accommodate a disabled individual's needs, it "'does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so.'" *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 698 (5th Cir. 2014).

Contrary to the slight reframing in the Appellant's brief, in the Complaint, Hayes does not allege that GStek failed to engage in the interactive process at any point, nor does he actually allege that GStek denied his accommodation request. In fact, he alleges that the Army denied his request and acknowledges GStek's effort to accommodate in light of the Army's denial. "Although the Army

23

altogether failed to engage in the interactive process with [Hayes] and denied him the reasonable accommodation he requested. GStek nevertheless stated that it would try to accommodate [Hayes], to the extent possible, by permitting him to work from home a couple of days per week." Complaint ¶ 57, ROA.7-32.

Hayes then attempts to draw a more nuanced distinction between the accommodation that he requested and the accommodation that he received, all the while acknowledging that he in fact received an accommodation. To be clear, the Complaint does not clearly state that his initial accommodation request was for full time remote work. He alleges that the Reasonable Accommodation Request form requested "remote work", without indication of frequency. Complaint ¶ 20, ROA.7-32. Likewise, the supporting medical documentation did not specify *full-time* remote work. Complaint ¶ 21, ROA.7-32. The Complaint does not mention full-time remote work at all until the Army indicated that "it would not be in the best interest of the organization to allow full-time teleworking." Complaint ¶ 26, ROA.7-32. From that point on in the Complaint, Hayes impliedly suggests that this was his initial request all along. However, the face of the pleadings suggest that the request, and the supporting documentation, were more open ended, contradicting the later suggestion that GStek denied his request. To the contrary, based on the wording in the Complaint, it appears that GStek gave Hayes what he asked for. At the very least, it is irrefutable that GStek accommodated Hayes in a

24

manner that was consistent with the supporting medical documentation and the directives from the Army.

Hayes then asserts in a conclusory fashion that "[t]he proposed accommodation, however was not reasonable…." Complaint ¶ 59, ROA.7-32. However, "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Wright v. Bd. of Comm'rs of the Capital Area Transit Sys.*, 551 F. Supp. 3d 607, 611 (La. M. D. 2021). Hayes would now have this Court construe the reasonable inferences from this conclusory statement in his favor, despite the established legal standard to the contrary, and the undisputed facts that contradict this conclusory statement.

The ADA states, and Hayes acknowledged, that "reasonable accommodations" include: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B) (emphasis added); *See* Complaint ¶ 48, ROA.7-32. The hybrid-work schedule provided to Hayes falls well within this definition.

Further, as previously stated, Hayes provided a note from his treating physician which expressly stated that Hayes would benefit from being able to work

25

from home *as much as possible*. ROA.183–89. This physician's note, alongside the limiting circumstances dictated by the Army, informed the parameters for Hayes's reasonable accommodation. Accordingly, GStek allowed Hayes to work from home "as much as possible". Given the Army's denial of his request for full time remote work, the hybrid-work schedule was "as much as possible" in light of the circumstances.

In an additional effort to free himself from the Army's restrictions on full time remote work and salvage the reasonability of his accommodation request, Hayes for the first time argues that the wording of the Army's denial of his accommodation request did not "mandate" full time in person work, leaving room for the remote possibility that GStek could have disregarded the Army's response. (Appellant's Br. pp. 34-35). This directly contradicts Hayes's position that was repeatedly emphasized throughout the Complaint, that the Army controlled the terms and conditions of his employment on Fort Johnson/Polk and that they denied his request for full time remote work. Complaint ¶¶ 26, 51, 53-55, ROA.7-32.

There are also several issues surrounding the authority Hayes references in his criticism of the District Court's dismissal of his failure to accommodate claim. Hayes cites to a string of non-binding out of district authority to purportedly show that other entities, clearly subject to different circumstances than GStek, have

granted accommodations for full time remote work.[6] This, in and of itself, is not persuasive, particularly in light of the clarifying legal authority cited later in his brief that "the reasonableness of telework cannot be presumed." See Appellant's Br. p. 49; *Ali v. Regan*, 111 F.4th 1264, 1280 (D.C. Cir. Aug. 9, 2024). These cases are not persuasive, and they only serve to distract from the issue at hand. More importantly, by referencing these cases, Hayes is improperly attempting to circumvent the judgment of the Army, who is not a party to this appeal, and recharacterize the individual circumstances surrounding the accommodation approval process. Somehow, Hayes is simultaneously requesting this Court to find that his request for fulltime remote work was objectively reasonable while also claiming that, under the same standard, the District Court could not have assessed the specific context of his accommodation request and determined that it was unreasonable. This line of argument and the fact that Hayes continues to attack the Army's determination of his accommodation request, tacitly acknowledges the limited parameters placed on GStek, its reasonable effort to accommodate, and the Catch-22 that Hayes is attempting to manufacture for GStek in this case.

---

[6] The more subtle contradiction in this line of argument arises later in Appellant's brief when he takes great issue with the District Court's acknowledgement and use of non-binding authority.

27

Finally, in the Appellant's brief, Hayes appears to misapply the *E.E.O.C. v. Methodist Hospitals of Dallas*, "two-step test for determining whether an accommodation is reasonable". 62 F.4th 938, 943 (5th Cir. 2023) The Supreme Court's application of the two-step *Barnett* framework in that case was specifically addressing the question of when *reassignment* to a vacant position was a reasonable accommodation. *Id.* ("The Court was presented with the question of whether the [ADA] requires an employer to reassign a disabled employee to a position as a reasonable accommodation even though another employee is entitled to hold the position under the employer's bona fide and established seniority system. The Court held that reassignment is not a reasonable accommodation when an employer has an established seniority system."(internal quotations missing). This test does not apply as Hayes did not request reassignment.

However, *Barnett* does provide helpful analysis of the meaning and intent behind the words "*reasonable* accommodation" as they are used under the Americans with Disabilities Act.

> For one thing, in ordinary English the word "reasonable" does not mean "effective." It is the word "accommodation," not the word "reasonable," that conveys the need for effectiveness. An ineffective "modification" or "adjustment" will not accommodate a disabled individual's limitations. Nor does an ordinary English meaning of the term "reasonable accommodation" make of it a simple, redundant mirror image of the term "undue hardship." The statute refers to an "undue hardship on the operation of the business." 42 U.S.C. § 12112 (b)(5)(A). *Yet a demand for an effective accommodation could prove unreasonable because of its impact*, not on business operations, but

28

on fellow employees -- say because it will lead to dismissals, relocations, or modification of employee benefits to which an employer, looking at the matter from the perspective of the business itself, may be relatively indifferent.

….

Neither has Congress indicated in the statute, or elsewhere, that the word "reasonable" means no more than "effective." The EEOC regulations do say that reasonable accommodations "enable" a person with a disability to perform the essential functions of a task. But that phrasing simply emphasizes the statutory provision's basic objective. *The regulations do not say that "enable" and "reasonable" mean the same thing*.

*US Airways, Inc. v. Barnett*, 535 U.S. 391, 400-01 (2002)(emphasis added). This directly refutes Hayes's claim, and undergirding rationale, that the hybrid-work schedule was not reasonable because it did not effectively enable him to work without difficulty or abate the adverse effects of his condition. See Appellant's Br. at 50 and Compl ¶ 59. ("This proposed accommodation, however was not reasonable, which led Plaintiff to experience a mental breakdown, causing him to miss four (4) days of work in January 2023 and obtain additional medical assistance, including the increase in dosage of his various disability-related medications.") The balancing inquiry of whether an accommodation is either reasonable or effective should not be conflated as Hayes has done in this case. The Supreme Court has clearly acknowledged that an accommodation can be reasonable, yet ineffective. Part of that analysis may overlap with an employer's undue burden defense, which will be addressed in turn. Either way, that does not

29

create a basis upon which Hayes can then assert the conclusory allegation that his hybrid-work schedule accommodation was unreasonable simply because it was ineffective. Nor does it afford him the benefit of a reasonable inference from a conclusory statement contrary to established legal precedent.

**2. Hayes did not sufficiently allege that he was a qualified individual with a disability.**

Throughout the Appellant's brief, Hayes appears to oscillate between the notion that he alleged facts in the Complaint with sufficient detail, but that the District Court somehow did not have sufficient context to determine the plausibility of whether the hybrid-work schedule was reasonable. To the contrary, the facts as plead, and the relevant context that they capture, are likely what led the District Court to its plausibility determination. This is particularly true as it relates to whether Hayes was a qualified individual with a disability.

The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." See 42 USC § 12111(8). The ADA defers to the employer to determine the essential job functions of an employee. "For the purposes of this title, consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 USC § 12111(8). Practically, this deference to the employer is significant because, "[w]hile the ADA does require an employer to reasonably accommodate a disabled

30

individual's needs, it 'does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so.'" *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 698 (5th Cir. 2014).

In the Complaint, Hayes makes the conclusory assertion that he was "objectively qualified for his position. . . . Not only was [Hayes] hired for the position, but he was able to perform the essential functions of the job, with or without a reasonable accommodation. Indeed, [Hayes] successfully performed all of his essential job functions from 2019 through February 2022, during which time he performed the same remotely." Complaint ¶ 47, ROA.7-32.

The logic applied by the District Court when faced with this conclusory allegation is not abstract. In fact it merely follows the series of undisputed facts alleged in the Complaint. First, Plaintiff claims that he was able to perform the essential functions of his job. To be clear, while other factors *may* be considered, the "consideration *shall* be given to the employer's judgment as to what functions of a job are essential." 42 USC § 12111(8). To that end, regardless of the previously dismissed joint employer theory, Hayes conceded that the Army provided the place of work for Plaintiff, and . . . had the express authority to control and set various terms and conditions of GStek employee's employment at the Fort Polk/Fort Johnson base, including whether or not they could telework." Complaint ¶ 52,

31

ROA.7-32. As such, the present and undisputed factors to be considered when assessing the essential functions of Hayes's position existed within the combined scope of his employment with GStek and the control of the Army and the expressed needs for services at the Fort Polk/Johnson base. There were several factual allegations on the face of the pleadings that helped the District Court assess the essential functions of his position, namely: Hayes began his employment with GStek remotely during the COVID-19 pandemic, Complaint ¶¶ 14–15, ROA.7-32; by 2022 circumstances changed and the Army had expressly required in-person support, Complaint ¶¶ 47, 16 , ROA.7-32; when presented with Hayes request for an exception to the established in-person expectation, the Army denied Hayes's request, Complaint ¶ 26, ROA.7-32. While the Army did not expressly state that it was denying full-time telework because in person work was an essential function of Hayes's position—as employers and contracting parties rarely do—it was clearly significant or at the very least "more than a marginal relationship to the job at issue", evidenced in part by the fact that they had just transitioned back to in-person services. *See Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021). The relevant standard does not impose a sliding scale on which a court is obliged to determine how essential a particular function may be, instead the statute gives deference to the employer's determination of the essential functions of a given position. Hayes contends in part that in-person work must not have been

essential because GStek was initially inclined to grant his request for full time remote work. However, this blatantly overlooks the chronological sequence of events, the approval required despite their initial inclination, and the conceded control that the Army had over his job functions.

Regardless of the ultimate determination of the essential functions of his position, the Complaint does not sufficiently allege Hayes's ability to perform any of the essential functions of his position with or without an accommodation. The District Court correctly identified that the asserted time from which Hayes attempts to establish himself as a qualified individual is misleading. In the Complaint, Hayes alleged that he was a qualified individual with a disability because he "successfully performed all of his essential job functions from 2019 through February 2022, during which time he performed the same remotely." Complaint ¶ 47, ROA.7-32. Notably, Hayes did not begin his employment with GStek until December 21, 2021. Even if the District Court were to construe this assertion in Hayes's favor, he would then be alleging that approximately two months of work—shorter than the introductory/probationary period for most positions—is sufficient to demonstrate that he was a qualified individual with a disability. Nonetheless, the District Court was correct in questioning the reasonability of that inference, as it also does not account for the shift out of the pandemic-era working conditions that the Army transitioned away from in February 2022 that would purportedly be in

place going forward. The remaining facts regarding Hayes's performance after February 2022, exhibit severe challenges with nearly every function or expectation of his position, even with the hybrid-work accommodation. At that point, it becomes highly implausible that Hayes could ever establish that he could perform the essential functions of his position, with or without an accommodation, in part because the face of the pleadings do not provide a functional time frame for the district to make such a determination. Hayes cannot merely depend upon reasonable inferences construed in his favor to establish facts where there are none.

Whether Hayes is a qualified individual pursuant to the ADA standard is an essential element of his *prima facie* Failure to Accommodate claim. Hayes's status as a qualified individual was facial implausible due to the undisputed facts alleged, insufficient factual matter regarding his ability to perform the essential functions of the position, and his apparent attempts to mislead. The District Court accurately determined that this is fatal to his Failure to Accommodate claim and warranted dismissal.

### 3.    Hayes is not entitled to his preferred accommodation

It is well established that the "ADA provides a right to reasonable accommodation, *not to the employee's preferred accommodation*". *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011)(quoting *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009)(emphasis added).

34

As previously stated, Hayes's request for full-time remote work as an accommodation was not aligned with either the supporting documentation from his treating physician, which recommended remote work "as much as possible", or the expressed interests of the Army, who controlled the terms and conditions of his employment. Under the "full constellation of circumstances and facts" it is clear that Hayes preferred full time remote work. To characterize the disparity between his physician's recommendation and his request as anything else other than a preference is to stretch beyond the reasonable scope of inference that he is entitled to under a Motion for Judgment on the Pleadings.

Moreover, the District Court did not ignore Hayes's alleged attempts to re-engage GStek after his condition persisted during the hybrid-work schedule. These allegations are just untethered from any articulable claim in the Complaint. To be clear, in the Complaint, Hayes does not allege that GStek ever failed to engage in the interactive process. Hayes alleges facts pertinent to the discussions he had with GStek surrounding his initial request for accommodation, Complaint ¶¶ 22-23, 27, ROA.7-32, he alleges that there was disjointed communication with his supervisor and confusion around his options when his condition persisted throughout the accommodation period, Complaint ¶¶ 32–35, ROA.7-32. but he stops short of ever

alleging that GStek failed to "re-engage" in the interactive process.[7] This is particularly noteworthy as the First and Second Causes of Action in the Complaint are captioned "ADA/RA Failure to Accommodate/*Engage in the Interactive Process*". In that section of the Complaint, Hayes specifically alleges that the Army "altogether failed to engage in the interactive process" and contrasts that failure to GStek's ongoing efforts to accommodate. Complaint ¶ 57, ROA.7-32. Again, Hayes never alleges that GStek should have, or failed to, re-engage in the interactive process in the Complaint. Nor does he indicate that, when his condition persisted throughout the accommodation period, he provided GStek with any medical documentation superseding the physician's note that he had provided three months prior, despite the, at least two, visits to healthcare providers alleged during that time frame. It is not only implausible, but it would be improper for a reasonable jury or fact finder to find that GStek has somehow failed to meet a legal obligation, or is liable for a claim, that Hayes himself has not identified on the face of the pleadings.

---

[7] Within this string of allegations, Haye's claims that GStek either denied or ignored his requests to delay "attending drill". GStek is unaware of what this may be referencing, and assumes it may be related to his separate affiliation with the military. GStek does not require its employees to attend drill of any kind.

36

### 4.    Hayes has misapplied the undue hardship standard

Hayes concludes his efforts to resurrect his failure to accommodate claim by somewhat curiously attempting to preempt the notion of whether his requested accommodation would impose an undue hardship. He exerts significant effort to demonstrate that his accommodation request would not have been an undue hardship for the Army, who is not a party to this appeal, and cites to clearly distinguishable authority in an effort to suggest that GStek should have just ignored the Army's directive regarding his accommodation request.

First, and perhaps most importantly, the only reference to undue hardship in the pleadings is GStek's reservation of the affirmative defense in its Answer to the Complaint. ROA.81–95. Gstek did not allege undue hardship in support of its Motion for Judgment on the Pleadings. Presumably, Hayes is attempting to preempt this issue because he identifies that the reasonable inferences construed from the facts alleged lend themselves to such a defense and further fragment the facial plausibility of his failure to accommodate claim. Nonetheless, Hayes has not done so and appears to have drawn more attention to the issue.

Setting aside the portions of Hayes's argument that unnecessarily criticize the Army, Hayes cites to *Burton v. Freescale Semiconductor, Inc.* to support the notion that GStek could have somehow provided him with his requested accommodation, despite the Army's control and directive. 798 F.3d 222 (5th Cir.

2015). The inapplicability of this standard is evident even in the select quotations Hayes chose to incorporate into his brief. *Burton* involved a temporary employee who had been assigned to work for Freescale Semiconductor Inc. through an agency, Manpower. In that case, the court began by finding that Freescale and Manpower were joint employers of Burton. *Id.* at 227. The relationship among the parties in that case already deviates from the case at hand, as the District Court held that the Army was not a joint employer. The joint-employer relationship in *Burton* is significant because it also served as a potential basis for shared liability. "A staffing agency is liable for the discriminatory conduct of its joint-employer client if it participates in the discrimination, or if it knows or should have known of the client's discrimination but fails to take corrective measures within its control" *Id.* at 229. Hayes does accurately capture the District Court's finding that "a purported contractual obligation to fire an employee on a discriminatory basis is no defense", *Id.*, but misapplies the District Court's logic to this case. In *Burton*, Freescale requested Burton's termination, despite Manpower's advice to the contrary, and persisted until Manpower relented to their request. *Id.* at 226. In this case, nothing of this sort occurred. In fact, the District Court's Memorandum Ruling dismissing the Army held that " the Army is not Hayes'[s] employer, and the Army did not make the decision to terminate Hayes. The only allegation Hayes makes against the Army was to advise GStek that under the terms of the contract,

full-time remote work was not in the Army's best interest." ROA.133-141. Accordingly, GStek tailored the accommodation so that it could fit the parameters set by Hayes's physician and the Army. This is markedly different than Manpower's attempt to hide behind their contract with Freescale after relenting to pressure and terminating Burton.

GStek's argument that "full time remote work was not an option due to the Army's decision" was not an attempt to hide behind its contract with the Army. It is undisputed that the Army refused the request for full-time remote work. Because Hayes's job was centered around servicing the Army, this was clearly a limiting factor in the available options for his accommodation. Virtually every employer faced with an accommodation request must also account for limiting factors up to, and including, a potential determination that the requested accommodation is an undue hardship pursuant to 42 USCS § 121111(10). Hayes appears to be taking the untenable position that somehow GStek was either free to ignore the Army's decision, despite his prior acknowledgement that the Army controlled the terms and conditions of his position, or that GStek's efforts to accommodate him in light of the Army's decision is somehow "participating in the discrimination". (Truly, no good deed goes unpunished under Hayes's theory of the case.) Ultimately, neither position can be reached through any reasonable inference afforded to Hayes under the relevant standard of review.

39

While Hayes's position on undue hardship is both misguided and arguably moot for purposes of this appeal, it also reveals the fundamental flaw of Hayes case. His attempted use of *Burton*, and his analysis of the Army's potential hardship appear to be an attempt to improperly resurrect his previously dismissed joint-employer claim, and reassert his dissatisfaction with the Army's decision, that was otherwise outside of GStek's control. Ultimately, the District Court saw through this attempt and correctly determined that Hayes failed to adequately plead a failure to accommodate claim.

Moreover, his back door attempt to assert liability on to GStek because it allegedly "participated in the discrimination or knew or should have known of the Army's discrimination but failed to take corrective measures within its control" further demonstrates the indistinguishable overlap between Hayes's failure to accommodate, disparate treatment, and retaliation claims.

**II. The District Court accurately identified that Hayes's failure to accommodate, disparate treatment, and retaliation claims are indistinguishable.**

**A. The District Court adhered to the law of the case.**

In the District Court's Memorandum Ruling, the District Court specifically extended its prior ruling regarding the indistinguishable claims in the Complaint. This was a specific reference to the established law of the case, determined in the prior Memorandum Ruling dismissing the Army. "The law-of-the-case doctrine

posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case. The doctrine generally bars the district court on remand, or the appellate court on a subsequent appeal, from reexamining an issue of law decided on appeal. Importantly, the law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not." *Lindquist v. City of Pasadena*, 669 F.3d 225, 238–239 (internal citations and quotations omitted). The District Court's application of *Johnson v. Norton Cnty. Hosp.*, was a decision on an issue of law—based on the overlapping facts alleged and indistinguishable structure of Hayes's claims as were evident on the face of the Complaint—that was well within the District Court's authority. Moreover, when it established the law of the case, it did so in a manner that was not exclusive to Hayes's claims against the Army. The District Court identified the structural flaw of Hayes's Complaint, specifically cited factual allegations alleged against both the Army and GStek, and identified a legal theory that prohibited the circular and indistinguishable nature of his claims. ROA.133-141. Hayes did not appeal this decision, or the Army's dismissal at all, and it became the law of the case. As such, the District Court properly extended that decision to GStek when it granted the Motion for Judgment on the Pleadings and dismissed the case.

41

**1. Hayes waived his opportunity to object to the law of the case**

Hayes now seeks to assert an argument that it very well could, and should have, asserted when this sound legal theory became the law of the case. Under the waiver doctrine, Hayes is foreclosed from revisiting and seeking remand on an issue that is already the settled law of the case. The waiver doctrine holds that "an issue that could have been but was not raised on appeal is forfeited and may not be revisited by the district court on remand." *See Medical Ctr. Pharm. v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011); *Bayou Steel Corp. v. Nat'l Union Fire Ins. Co.*, 487 Fed. Appx. 933, 936 (5th Cir. 2012). *See also United States v. Castillo*, 179 F.3d 321, 326 (5th Cir. 1999) ("The waiver doctrine bars consideration of an issue that a party could have raised in an earlier appeal in the case."); *United States v. Lee*, 358 F.3d 315, 321 ("[T]he rule bars litigation of issues decided by the district court but foregone on appeal or otherwise waived . . . . [I]ssues not arising out of this court's ruling [on appeal] and not raised in the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below.").

This is a matter of both substantive and procedural significance. "The waiver doctrine, like the law-of-the-case doctrine, 'serves judicial economy by forcing parties to raise issues whose resolution might spare the court and parties later rounds of remands and appeals.' But it 'differs from the law-of-the-case doctrine

42

in that it arises as a consequence of a party's inaction, not as a consequence of a decision on our part.'" *Medical Ctr. Pharm.*, 634 F.3d at 834 (quoting Castillo, 179 F.3d at 326).

The District Court made a determination about the questionable structure and overlapping nature of Hayes's claims when it dismissed the Army. Hayes was silent despite knowing that this decision upon a rule of law was equally applicable and likely to extend to GStek because the Complaint asserts the same indistinguishable claims against both parties. Hayes now asks this Court to overlook his waiver and remand this matter so that he can attempt to overcome the law of the case at a later point in these proceedings, likely during summary judgment. This is the precise scenario that the law of the case and waiver doctrines are designed to prevent. To the extent that this Court is concerned about the District Court's application of non-binding authority, which is not impermissible in and of itself, this Court does not actually need to reach the merits of that line of argument. This Court can, and should, uphold the District Court's ruling on Hayes's indistinguishable claims under the law-of-the-case and/or waiver doctrines.

## B.    Hayes's claims are indistinguishable from each other

Nonetheless, the District Court's application of *Johnson v. Norton* is sound. The District Court twice considered the overlapping and circular nature of Hayes's disparate treatment, retaliation, and failure to accommodate claims and dismissed

43

them because "discriminatory/retaliatory termination cannot be a separate and distinct claim from failure to accommodate when the alleged unlawful termination *is based on the alleged failure to accommodate*." *See, e.g., Johnson v. Norton Cnty. Hosp.*, 550 F.Supp. 3d 937, 961 (D. Kan. 2021)(emphasis added); *Bess v. Dist.*, No. 19-3152 (JEB), 2020 WL 4530581, at *4 (D.D.C. Aug. 6, 2020); *Harris v. Carrier Corp.*, No. 1:15cv01952-JMS-MJD, 2017 WL 4037658, at *6 (S.D. Ind. Sept. 13, 2017) (quoting *Moore-Fotso v. Bd. of Educ. of the City of Chicago*, 211 F.Supp. 3d 1012, 1037 (N.D. Ill. 2016) (collecting cases))." Despite Appellant's attempts to distinguish *Johnson* from this case, the underlying facts are sufficiently analogous to support the application of the above legal principle to Hayes's claims.

In *Johnson*, the plaintiff similarly alleged failure to accommodate, disability discrimination, and retaliation in violation of the ADA. *Johnson*, 550 F.Supp. 3d at 944. Unlike Hayes, Johnson's accommodation request was backed by both an FMLA request—which made Johnson's request facially reasonable—and supporting documentation from her treating physician. *Id.* at 947. Additionally, the initial conflict for both Johnson and Hayes involved a dispute over the sufficiency of the accommodation granted by their employer.

In his Appellant's brief, Hayes correctly acknowledges the underlying logic of *Johnson*, that the adverse employment action at issue must be distinct from the alleged failure to accommodate. Otherwise, the claims would become

44

indistinguishable and duplicative. The application of this theory to both retaliation and discrimination claims naturally follows because both require a showing of an adverse employment action, and thus bear the same risk of becoming subsumed by a failure to accommodate claim. Under this reasonable, and seemingly admitted, interpretation of *Johnson*, the District Court then assessed what appears to be a self-inflicted pleading error by Hayes as he repeatedly conflated the nature of the alleged adverse employment action in his claim. Throughout his Complaint, Hayes repeatedly downplays the otherwise nondiscriminatory and nonretaliatory basis for his termination, and recharacterized it as an extension of his failure to accommodate claim.

To the District Court's credit, it provided additional analysis when it properly extended its prior decision, and the law-of-the-case, to GStek. In doing so, the District Court quoted one of several facts alleged in the Complaint that demonstrate that the discrimination and retaliation claims are based on the alleged failure to accommodate.

Regarding Plaintiff's discrimination claim:

> • "Plaintiff was terminated for absenteeism; however, all of the absences - most of which happened just a week prior - occurred as a direct function of Plaintiff's known disabling conditions, *combined with Defendants' collective refusal and/or failure to provide the reasonable telework accommodation Plaintiff requested*." ECF No. 1 ¶ 70 (emphasis added).
> • "[T]o the extent Defendant(s) rely upon any of Plaintiff's medically related absences which stem, from whole or in part,

Plaintiff's medical conditions *as exacerbated by Defendants' failure and/or refusal to reasonably accommodate* Plaintiff's telework request, the decisions to discharge Plaintiff was driven exclusively by Plaintiff's disabling condition in violation of the ADA and/or RA." ECF No. 1 ¶ 72(emphasis added).

Regarding Plaintiff's Retaliation claim:

- "Within approximately (3) months of Plaintiff's initial accommodation request, Plaintiff was altogether terminated from his employment . . . . the reason proffered for Plaintiff's termination, i.e., absenteeism, *is driven entirely from Defendants' collective failure and/or refusal to implement the very accommodation Plaintiff requested*." ECF No. 1 ¶ 81(emphasis added).
- "But for Plaintiff's request for an accommodation (i.e. protected activity), Plaintiff would not have been discharged from his employment." ECF No. 1 ¶ 82.

It is clear that Hayes's discrimination and retaliation claims are inextricably intertwined with his failure to accommodate claim in a manner that other courts have previously deemed improper. These are precisely the kind of duplicative claims that the court in *Johnson* and the related cases were trying to avoid, particularly where the claims themselves are conflated and overlapping on the face of the pleadings. To construe these facts and any resulting inferences in Hayes's favor is unreasonable and risks turning this case into an unnecessary shell game upon remand. But remand is not necessary. Ultimately, the District Court's logic and interpretation was sound, it established the law of the case, and Hayes waived the opportunity to refute this standard prior to this appeal.

46

## **CONCLUSION**

The District Court did not err in granting GStek's Motion for Judgment on the Pleadings. Independently, Hayes's arguments regarding the established theory of the case are barred and/or waived. This Court should affirm the judgment below.

By: <u>*/s/ William M. Palmer*</u>
Ross M. Raley (LA Bar No. 33323)
STOCKWELL SIEVERT LAW FIRM
127 W. Broad Street, 4th Floor
Chase Bank Building
Lake Charles, Louisiana 70601
T: (337) 493-7298
F: (337) 312-2937
rmraley@ssvcs.com

William M. Palmer (*pro hac vice)*
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, Virginia 23510
T: (757) 624-3000
F: (888) 360-9092
william.palmer@kaufcan.com

*Counsel for Appellee GStek, Incorporated*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on October 22, 2025, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*/s/  William M. Palmer*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief has been prepared using 14-point, proportionately spaced, serif typeface, in Microsoft Word.  Excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 10945 words.


/s/  *William M. Palmer*