No. 25-30392

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

_____

ALBERT M. HAYES,

*Plaintiff-Appellant,*

*v.*

GSTEK, INCORPORATED,

*Defendant-Appellee*

_____

On Appeal from the United States District Court
for the Western District of Louisiana, Lake Charles Division

_____

**REPLY BRIEF OF PLAINTIFF-APPELLANT ALBERT M. HAYES**

_____

**SUDDUTH & ASSOCIATES, LLC**
1109 Pithon Street
Lake Charles, Louisiana 70601
Tel: (337) 480-0101
Fax: (337) 419-0507
Email: james@saa.legal
Email: kourtney@saa.legal

**BY:** /s/ James E. Sudduth, III
JAMES E. SUDDUTH, III
KOURTNEY L. KECH

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page(s)**

ARGUMENT IN REPLY ................................................................................1

I.  GStek Did Not Attach Documents to Its Motion for Judgment
    On the Pleadings; Judicial Notice is Inappropriate ...................................2

II. Resolving Fact Questions and Any Ambiguity in Current Controlling
    Substantive Law In Hayes' Favor, Hayes' Complaint Sets Forth a
    Plausible Failure-to-Accommodate Claim ..................................................5

   A. Regular In-Person Attendance Was not an Essential Function
      Of Hayes' Position .................................................................................7

   B. Hayes Plausibly Alleged That He Was a Qualified Individual.............9

   C. Hayes Plausibly Alleged that He Requested a Reasonable
      Accommodation ...................................................................................10

   D. Hayes Plead Sufficient Facts to Establish that GSTek Failed
      to "Reasonably Accommodate" Him: An Initial Attempted
      "Accommodation" that is Ineffective is Not a "Reasonable
      Accommodation," and a Failure to Re-Engage in the
      Interactive Process Plausibly Constitutes a Failure
      to Accommodate...................................................................................13

   E. Full-Time Telework Was Not Simply Hayes'
      "Preferred Accommodation" Under the Facts of this Case ................17

   F. GStek Has Not Established an Undue Burden Defense......................19

III. The "Law of the Case" Doctrine Has No Bearing on this Appeal...........22

IV. Even if the Law of the Case Doctrine Applies, The District Court
    Was Free to Reassess its Determination; Its Failure to Do So, Which
    Results in "Clear Error," Is Properly Subject to Review .........................25

V.    The District Court Erroneously Considered Hayes' Claims as "Indistinguishable"..................................................................26

CONCLUSION ..................................................................................29

CERTIFICATE OF SERVICE ..........................................................30

CERTIFICATE OF COMPLIANCE WITH
FED. R. APP. PRO 32 AND 5th CIR. R. 32 .......................................31

# TABLE OF AUTHORITIES

**Case Law** **Page(s)**

*Ali v. Regan,*
111 F.4th 1264 (D.C. Cir. Aug. 9, 2024)......................................................15

*Ariza v. Loomis Armored US, LLC,*
132 F.Supp.3d 775 (M.D. La. Sept. 23, 2015)............................................12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 562 (2007).............................................................................29

*Bergeron v. LCMC Urgent Care, LLC,*
2022 WL 1238616 (E.D. La. Apr. 27, 2022)..........................................15, 16

*Bess v. District of Columbia*,
2020 WL 4530581 (D.D.C. Aug. 6, 2020) .............................................23, 24

*Burton v. Freescale Semiconductor, Inc.,*
798 F.3d 222 (5th Cir. 2015) .....................................................................1, 21

*Cloutier v. Costco Wholesale Corp.*,
390 F.3d 126 (1st Cir. 2004).........................................................................20

*Construction Cost Data, LLC v. Gordian Group, Inc.,*
2017 WL 2266993 (S.D. Tex. Apr. 24, 2017) ..............................................21

*Credeur v. Louisiana*,
860 F.3d 785 (5th Cir. 2017) ..........................................................................8

*Das v. American Airlines, Inc.,*
2020 WL 364264 (N.D. Tex. Jan. 21, 2020) ................................................29

*Dean v. University at Buffalo Sch. of Med. and Biomed. Sciences*,
804 F.3d 178 (2d Cir. 2015)...........................................................................15

*Dillard v. City of Austin, Tex.*,
837 F.3d 557 (5th Cir. 2016) .....................................................................15, 16

*E.E.O.C. v. Ford Motor Co.,*
782 F.3d 753 (6th Cir. 2015) ...................................................................................8

*E.E.O.C. v. LHC Grp., Inc.,*
773 F.3d 688 (5th Cir. 2014) .............................................................................21, 22

*E.E.O.C. v. Methodist Hospitals of Dallas,*
62 F.4th 938 (5th Cir. 2023) .............................................................................11, 12

*Feldman v. Olin Corp.,*
692 F.3d 748 (7th Cir. 2012) ...............................................................................11

*Fiest v. La., Dep't of Just., Off. of the Att'y Gen.,*
730 F.3d 450 (5th Cir. 2013) ...............................................................................6

*Free v. Abbott Lab, Inc.,*
164 F.3d 270 (5th Cir. 1999) ...............................................................................11

*Garza v. U.P.S., Inc.,*
2025 WL 1827064 (S.D. Tex. Jul. 2, 2025)........................................................12

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,*
313 F.3d 305 (5th Cir. 2002) ...............................................................................3

*Gunter v. Bemis Co., Inc.,*
906 F.3d 484 (6th Cir. 2018) ...............................................................................13

*Hargett v. Phillips 66 Company,*
2025 WL 278632 (S.D. Tex. Jan. 22, 2025)........................................................12

*Harris v. Carrier Corp.,*
2017 WL 4037658 (S.D. Ind. Sept. 13, 2017) ...............................................23, 24

*Hillebrand v. Dollar General Corp.,*
2013 WL 3761291 (M.D. Tenn. Jul. 16, 2013) ..................................................27

*Holly v. Clairson Indus., L.L.C.,*
492 F.3d 1247 (11th Cir. 2007) ...........................................................................8

*Hostettler v. College of Wooster,*
895 F.3d 844 (6th Cir. 2018) ....................................................................8, 11, 12, 13

*Humphrey v. Mem'l Hosp. Ass'n,*
239 F.3d 1128 (9th Cir. 2001) ...............................................................15, 27, 28

*Johnson v. Norton Cnty. Hosp.,*
550 F.Supp.3d 937 (D. Kan. 2021) ..................................................................23, 24

*Joseph v. Bach & Wasserman, L.L.C.,*
487 Fed.Appx. 173 (5th Cir. 2012) .......................................................................3

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,*
594 F.3d 383 (5th Cir. 2010) .............................................................................2, 3

*McAlinin  v. County of San Diego,*
192 F.3d 1226, 1257 (9th Cir.), *amended,*
201 F.3d 1211, *cert. denied,*
120 S.Ct. 2689 (2000) ...........................................................................................15

*McGregor v. Louisiana State Univ. Bd. of Supervisors,*
3 F.3d 850 (5th Cir. 1993) ...................................................................................10

*McMillan v. City of New York,*
711 F.3d 120 (2d Cir. 2013)..................................................................................14

*Pepper v. United States,*
562 U.S. 476, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011).........................................25

*Picard v. St. Tammany Parish Hosp.,*
611 F.Supp.3d 608 (E.D. La. Apr. 7, 2009).........................................................20

*Pomerantz v. Houston Methodist Hosp.,*
2014 WL 5090278 (S.D. Tex. Oct. 9, 2014) ........................................................18

*Smithson v. Austin,*
86 F.4th 815 (7th Cir. 2023)....................................................................................9

*Tafolla v. Heilig,*
80 F.4th 111 (2d. Cir. 2023) ................................................................................13

*Turner v. BNSF Railway Company,*
138 F.4th 224 (5th Cir. 2025) ...........................................................2, 12

*US Airways, Inc. v. Barnett,*
535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002)..................10, 11, 12, 13, 14

*United States v. Matthews,*
312 F.3d 652 (5th Cir. 2002) ...........................................................25

**Statutes**

29 C.F.R. § 1630.2(n)(1)...................................................................8

29 C.F.R. § 1630.2(o)(2)(ii)................................................................8

29 C.F.R. pt. 1630, App., § 1630.9 .......................................................18

42 U.S.C. § 12111(9) ....................................................................11

42 U.S.C. § 12111(10) ...................................................................31

42 U.S.C. § 12112(b)(5)(A)..............................................................11

**ARGUMENT IN REPLY**

GSTek suggests that, because the Army had some degree of control over at least some term or condition of GSTek employees' respective employment, GSTek is necessarily absolved from any liability under the ADA. This, however, is untrue. This Court has recognized that "a finding that two companies are an employee's 'joint employers' only affects each employer's liability to the employee for their own actions, not for each other's actions." *Burton v. Freescale Semiconductor, Inc.,* 798 F.3d 222, 228-29 (5th Cir. 2015). Consequently, a contractor such as GSTek can be liable for discriminatory conduct—even that originally undertaken by its client—if (1) it participated in the discrimination or (2) it knew or should have known about the client's discrimination and failed to undertake prompt corrective measures within its control. *Id.* at 229 n. 5.

Hayes has plausibly alleged that, irrespective of the Army's determination that full-time telework was not "in its best interest," GSTek failed to comply with its own, independent obligations under the ADA as Hayes' "employer."[1] This is not a motion for summary judgment, where the parties have had the benefit of discovery to develop facts as necessary predicates to support their numerous, respective legal conclusions as to Hayes' "qualification" for the position and whether GSTek failed to provide a "reasonable" accommodation. This is, instead, a

---

[1] ROA.22.

1

Rule 12(c) motion, which focuses on "whether, in the light most favorable to [Hayes], the complaint states a valid claim for relief." *Turner v. BNSF Railway Company,* 138 F.4th 224, 228 (5th Cir. 2025) (citations omitted). At this stage, ***"[a]ll questions of fact an any ambiguities in the current controlling substantive law must be resolved in [Hayes'] favor." Id.*** (emphasis added). When taking Hayes' well-plead allegations as true, and when resolving any fact questions and/or legal amibiguities in his favor, he easily surmounts the low Rule 12(c) bar. The district court erroneously dismissed Hayes' ADA claims, and it must be reversed accordingly.

I.   **GStek Did Not Attach Documents to its Motion for Judgment on the Pleadings; Judicial Notice is Inappropriate**

GStek argues that "[t]here are several noteworthy undisputed facts from Hayes's Complaint and Exhibits—or alternatively within the appropriate scope of judicial notice—that lead the District Court to its proper determination and dismissal." Appellee's Br. p. 28. GStek then lists a series of what it purports are "undisputed" facts, several of which appear nowhere in the documents properly considered in connection with a Rule 12 motion. Appellee's Br. 28-30.

When ruling on a motion to dismiss under Rule 12(b)(6), a court's analysis is "limited to the complaint, any documents attached to the complaint, and any documents ***attached to the motion*** to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,*

2

594 F.3d 383, 387 (5th Cir. 2010); cf. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 (5th Cir. 2002). The court may also take judicial notice of matters of public record. *See Joseph v. Bach & Wasserman, L.L.C.*, 487 Fed.Appx. 173, 178 (5th Cir. 2012).

Hayes' Complaint was accompanied by two substantive exhibits: 1) the EEOC's Notice of Suit Rights and 2) emails between Hayes' counsel and various EEO representatives relevant to now-dismissed claims against the Army. ROA.33-41. GSTek did *not* attach any exhibits to its Motion. ROA.149-67. Consequently, the district court's review should have been limited to Hayes' Complaint, the two exhibits annexed thereto, GStek's Answer, as well as any "judicially noticed facts" *Great Plains,* 313 F.3d at 313; *Joseph,* 487 Fed. Appx. at 178.

The "supporting documentation from Hayes' physician"[2] described by GSTek is not attached to Hayes' Complaint, nor was it submitted by GSTek as an exhibit to its Motion. The allegations plead, which must be taken as true, are: 1) Hayes submitted a Reasonable Accommodation Request form "requesting remote work" on October 12, 2022 and 2) in additional support of that request, Hayes provided a note from his treating physician, who recommended that Hayes "be permitted to perform remote work." ROA.19. From these allegations, in addition to the Army's subsequent denial of Hayes' request on or about November 8, 2022

---

[2] Appellee's Br. p. 29.

because "it would not be in the best interest of the organization to allow *full-time* teleworking," and as a result of "Dismer['s] refus[al] to honor *[Hayes'] request for full-time remote* work," Hayes has plausibly alleged that he, as of October 12, 2022, made an accommodation request in the form of *full-time* telework. To the extent GSTek disagrees,[3] the full substance of Hayes' accommodation request on October 12, 2022—whether it was "full-time" or "some" telework—is a genuinely disputed fact, which renders Rule 12(c) judgment improper. It is also not "irrefutable" that "GStek accommodated Hayes in a manner that was *consistent with the supporting medical documentation*," as GStek argues. Appellee's Br. p. 33-34.

The GSTek-Army "contract" referred to by GStek and the district court is also absent from the record. Nothing in the Complaint or Answer establishes that "[i]n February 2022, the Army sought to return to their pre-pandemic arrangements and required GStek's employees, including Hayes, to return to work in person," as GSTek submits. Appellee's Br. p. 29. There is no allegation relating to the Army's intent, the status of the Army's pre-pandemic arrangements, or to the substance of any "requirement" purportedly voiced to GSTek. Similarly, there is no allegation in either pleading establishing that "Hayes' essential job functions revolved around servicing the Army." Appellee's Br. 29. For the reasons set forth in Hayes' Opening

---

[3] Appellee's Br. p. 33.

4

Brief, on-site attendance was ***not*** an essential function of the Level II System Administrator (IT) position, and the Army's "preference" that its IT employees work onsite post-February 2022 did not transform an otherwise immaterial job condition to an "essential function."

Additionally, neither Hayes' Complaint nor GSTek's Answer or Motion attach any "dialogues" exchanged between Hayes and any agent or employee of GStek in January 2023.[4] Thus, no pleading establishes that Hayes "continually struggled with attendance, communication, and responsiveness" or that he and his supervisor "maintained an ongoing dialogue about his persistent attendance issues, but Hayes did not improve." Appellee's Br. 30. To the contrary, Hayes' Complaint alleges that he repeatedly reached out to GSTek between January 16, 2023 and January 24, 2023, that he received no response until he received a termination letter on January 25, 2023. ROA.21. Moreover, contrary to GSTek's self-serving "summarization" of fact, there is no factual assertion, much less an admission by Hayes, that his "*[attendance] issues persisted*," to an extent that Hayes was terminated due to absenteeism concerns. ROA.22. Appellee's Br. 30.

---

[4] Appellee's Br. 30.

**II.    Resolving Fact Questions and Any Ambiguity in Current Controlling Substantive Law In Hayes' Favor, Hayes' Complaint Sets Forth a Plausible Failure-to-Accommodate Claim**

Evidentiary issues notwithstanding, proper application of Rule 12(c) standards warrants wholesale reversal of the district court's ruling.

Though GSTek begins its ADA failure-to-accommodate analysis by arguing that "Hayes received a reasonable accommodation," Hayes addresses each of GSTek's argument(s) in the order articulated by this Court in its standard for stating a failure-to-accommodate claim. *Fiest v. La., Dep't of Just., Off. of the Att'y Gen.,* 730 F.3d 450, 452 (5th Cir. 2013). That being said, a fundamental question exists as to whether regular on-site attendance was an essential function of Hayes' Level II System Administrator (IT) position. No matter how the Court views the issue—as a question of qualification as to Hayes' *prima facie* case or as a question of reasonableness as to GSTek's rebuttal—the dispositive question is this: was being on-site an essential function of Hayes' job? *See E.E.O.C. v. Ford Motor Co.,* 782 F.3d 753, 763 (6th Cir. 2015). Because this threshold issue impacts Hayes' ability to establish his "qualification" for the position, the "reasonableness" of Hayes' requested accommodation, and the "reasonableness" of GSTek's initial provision of a lesser, hybrid-remote schedule, Hayes addresses this issue first:

6

### A. Regular In-Person Attendance Was Not an Essential Function of Hayes' Position

GSTek's position, as to both the qualification and the reasonableness argument, is premised on the faulty assumption that in-person attendance was an essential function of the position Hayes held.

As discussed in Hayes' Opening Brief, Hayes alleged that he had the capacity to perform all essential job functions of his position from home/remotely and had, in fact, done so successfully for at least two (2) years-since approximately 2019. ROA.18, 20. While GSTek mischaracterizes this factual assertion as a "conclusory allegation,"[5] the fact that Hayes indisputably performed work as a Level II System Administrator (IT) servicing the Army at Fort Polk—solely on a remote basis—and remained employed for several years doing so necessarily indicates that Hayes was fulfilling the essential functions of the role during that timeframe: certainly, he would have been terminated long before January 2023 otherwise.

While Hayes' titular "employer" may have changed from GC&E to GSTek in December 2021, he and other CG&E employees transitioned (i.e., rolled over) to GSTek, under the same job descriptions, in the same working conditions, in the same place, and for the same customer. GSTek merely assumed GC&E's government contract—everything else, including Hayes' core job functions,

---

[5] Appellee's Br. p. 40.

remained the same. Consequently, it is disingenuous for GStek to argue that Hayes' performance of the Level II System Administrator (IT) position, and its incumbent job functions, changed in any material respect when the Army's IT contract rolled from GC&E to GStek. Hayes' workplace performance while with GC&E in the subject position, which spanned from 2019 through December 2021, is probative to 1) establishing the essential functions of the position; and 2) Hayes' overall qualification for the job. GStek attempts to paint Hayes' employment rollover in 2021 as though he was assuming an entirely new/different position, which is untrue.

While the ADA requires courts to consider "[the] employer's judgment on the essential functions" of a position, the employer's judgment is *not* dispositive regarding whether a function is essential when evidence on the issue is "mixed." *Feldman v. Olin Corp.,* 692 F.3d 748, 755 (7th Cir. 2012); *Hostettler v. College of Wooster,* 895 F.3d 844, 854 (6th Cir. 2018); *Holly v. Clairson Indus., L.L.C.,* 492 F.3d 1247, 1258 (11th Cir. 2007). Put simply, "[f]ull-time presence at work is not an essential function of a job simply because an employer says that it is. *Hostettler*, 895 F.3d at 857. Aside from being antithetical to the purpose of the ADA, it would allow employers to negate the regulation that reasonable accommodations include leave or telework. *Id*. (citing 29 C.F.R. § 1630.2(o)(2)(ii)).

In the post-COVID economic world and with the advent of new technologies making working from home more feasible, courts must now assess whether in-person attendance is essential on a context-specific basis. *Smithson v. Austin,* 86 F.4th 815, 822 (7th Cir. 2023). Hayes has plausibly alleged that in-person attendance is not an essential function of the Level II System Administrator (IT) position. GSTek has come forth with no allegation or evidence to indisputably establish otherwise. At most, a fact question exists as to the essential functions of Hayes' position, and Hayes should be permitted to conduct discovery relevant to this highly fact-specific determination. The district court erred to the extent it deprived Hayes of this ability, and it must be reversed accordingly.

### B. Hayes Plausibly Alleged That He Was a Qualified Individual

For the reasons above, Hayes plausibly alleged that on-site attendance was not an essential function of his position. As such, Hayes has plausibly alleged that, with the provision of full-time telework, which he submits is a "reasonable accommodation" for the reasons below, he would have been able to perform the essential functions of the position, thus rendering him "qualified" for ADA purposes. To the extent the district court made factual determinations found nowhere in the pleadings, and/or to the extent it otherwise resolved fact disputes and inferences against Hayes, it must be reversed.

9

### C. Hayes Plausibly Alleged That He Requested a Reasonable Accommodation

Like the essential-function question, the "reasonableness" of an accommodation commonly involves context-based decisions ill-suited for summary judgment, and even moreso, a Rule 12 motion. *McGregor v. Louisiana State Univ. Bd. of Supervisors,* 3 F.3d 850, 855 (5th Cir. 1993).

At the summary judgment stage—and, *a fortiori*, at the Rule 12 stage—an employee need only show (or here, plead facts to establish) that his requested accommodation was "reasonable on its face." *US Airways, Inc. v. Barnett,* 535 U.S. 391, 401 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002). Hayes surmounts this standard.

Taken as true: 1) Hayes submitted a Reasonable Accommodation Request form "requesting remote work" on October 12, 2022 and 2) in additional support of that request, Hayes provided a note from his treating physician, who recommended that Hayes "be permitted to perform remote work." ROA.19. From these allegations, in addition to the Army's subsequent denial of Hayes' request on or about November 8, 2022 because "it would not be in the best interest of the organization to allow full-time teleworking," and as a result of "Dismer['s] refus[al] to honor [Hayes'] request for full-time remote work," Hayes has plausibly alleged that he, as of October 12, 2022, made an accommodation request in the

10

form of *full-time* telework. To the extent GSTek disagrees,[6] the substance of Hayes' initial accommodation request on October 12, 2022—whether it was "full-time" telework or simply "some telework"—is a disputed fact, which renders Rule 12(c) judgment improper. Resolving facts and inferences in Hayes' favor, he made a request for full-time telework on October 12, 2022.

Hayes has also plausibly plead facts establishing the "reasonableness" of this particular request. Given that Hayes had been permitted to perform his specific IT job functions on a full-time remote basis for a couple of years without issue, and given the specific, remote nature of Hayes' IT position, there is nothing facially unreasonable about Hayes' request to resume the full-time-remote schedule under which he had previously and successfully operated. Moreover, this change is precisely the sort of accommodation that Congress contemplated when it passed the ADA. *See* 42 U.S.C. § 12111(9)(B).

Although GSTek attempts to detract the Court's attention from the series of cases Hayes cites in his Original Brief,[7] Hayes cites these cases to illustrate that full-time telework can be a reasonable accommodation in the appropriate context. To do so is part of his burden under the Supreme Court's two-step test for determining whether an accommodation is reasonable, which requires Hayes to show that his proposed accommodation "seems reasonable on its face, i.e.,

---

[6] Appellee's Opening Br. 33.
[7] Appellee's Br. 35-36.

ordinarily or in the run of cases." *E.E.O.C. v. Methodist Hospitals of Dallas,* 62 F.4th 938, 944 (5th Cir. 2023) (citing *Barnett,* 535 U.S. 401)). These cases bolster the plausibility of Hayes' claim that his request for full-time telework was reasonable.

Hayes does not "misapply" this Court's analysis in *Methodist Hospitals,*[8] given that he only cited the case to establish this Court's recognition of the *Barnett* test. There is no limiting language in *Barnett* to suggest that the two-step framework it articulated and ultimately applied to the facts of that case only applies to reassignment-based accommodations. Though it does not appear that this Court has addressed *Barnett* in a different accommodation context, lower courts in this judicial district have applied *Barnett* to determine the reasonableness of other, non-reassignment-based accommodations. *See, e.g., Hargett v. Phillips 66 Company,* 2025 WL 278632 (S.D. Tex. Jan. 22, 2025); *Garza v. U.P.S., Inc.,* 2025 WL 1827064 (S.D. Tex. Jul. 2, 2025; *Ariza v. Loomis Armored US, LLC,* 132 F.Supp.3d 775, 793 (M.D. La. Sept. 23, 2015). Hayes submits that the *Barnett* test applies to this case; however, to the extent there is any ambiguity, it must be necessarily resolved in his favor for purposes of GStek's motion. *Turner*, 138 F.4th at 228.

---

[8] Appellee's Br. 38.

12

**D. Hayes Plead Sufficient Facts to Establish that GSTek Failed to "Reasonably Accommodate" Him: An Initial Attempted "Accommodation" that Fails or Otherwise Proves to Be Insufficient is Not a "Reasonable Accommodation," and a Failure to Re-Engage in the Interactive Process or to Modify an Initial Accommodation Plausibly Constitutes a Failure to Accommodate Under the ADA**

Hayes does not dispute that GStek offered an initial *attempt* at *an* accommodation beginning in approximately December 2022. ROA.20, 26. What Hayes does dispute, however, is that, under the particular facts, GSTek's provision of part-time telework to Hayes, rather than the full-time telework he requested (and needed to be able to perform the essential functions of his job), constituted a "reasonable accommodation" under the ADA.

GSTek's argument is premised on the incorrect assertion that, because it provided an initial workplace modification to Hayes, it necessarily provided a "reasonable accommodation" that comports with the ADA. This misapplies applicable law.

First, GStek cites the Supreme Court's holding in *Barnett* as one that "directly refutes Hayes' claim, and undergirding rationale, that the hybrid-work schedule was not reasonable because it did not effectively enable him to work without difficulty or abate the adverse effects of his condition." Appellee's Br. p. 38. This is a misreading of *Barnett*. GSTek's quote contains a portion of the *Barnett* Court's response to a specific argument made by the employee. *Barnett,*

13

535 U.S. at 399-400. The Court rejected this argument, as well as the employer's, and instead acknowledged the lower courts' ability to "reconcile the phrases 'reasonable accomodation' and 'undue hardship' in a practical way." *Id.* at 401. The Court then adopted the lower courts' approach to addressing the "reasonableness" of a proposed "accommodation," and established its two-part test. *Id.* at 401-02 (internal citations and quotations omitted).

GStek misstates *Barnett* to the extent it suggests *Barnett* "clearly acknowledged that an accommodation *can be reasonable, yet ineffective*." Appellee's Br. 38 (emphasis added). The *Barnett* Court noted the exact opposite: "a demand for an effective accommodation[9] could prove unreasonable" because of its impact on the business in some form. *Barnett,* 535 U.S. at 400. It is for that very reason that it adopted the two-part test Hayes applies.

Here, Hayes plausibly alleged that an effective accommodation existed, that it was plausible for Hayes to work from home and that doing so would enable him to perform the essential functions of his position (i.e., that the proposed accommodation was effective), and the technology to enable the work-from-home arrangement was not, on its face, unobtainable for either the Army nor GStek in

---

[9] "It is the word 'accommodation,' not the word 'reasonable,' that conveys the need for effectiveness. An *ineffective* "modification or "adjustment" will not *accommodate* a disabled individual's limitation." *Id.* at 401.

any respect (i.e., that it was reasonable). He has met his burden, especially at the Rule 12(c) stage.

That being said, this Court recognizes the ADA's requirement that a request for accommodation be an "interactive process ... to ascertain what changes would allow [the employee] to continue working*." Dillard v. City of Austin, Tex*., 837 F.3d 557, 562 (5th Cir. 2016). The process should be "ongoing" and "reciprocal"; ***it should not end with "the first attempt at accommodation," but instead continue when the employee asks for a different accommodation or where the employer "is aware that the initial accommodation is failing and further accommodation is needed." Id.*** (citation and quotation marks omitted)(emphasis added); *see also McAlinin  v. County of San Diego,* 192 F.3d 1226, 1257 (9th Cir.), *amended,*  201 F.3d 1211, *cert. denied,*  120 S.Ct. 2689 (2000)*; Humphrey v. Memorial Hosps Ass'n,* 239 F.3d 1128, 1133 (9th Cir. 2001), *cert. denied,* 525 U.S. 1011, 122 S.Ct. 1592, 152 L.Ed.2d 509 (2002))(emphasis added).

Since *Dillard*, another court in this district addressed a failure-to-accommodate claim based on allegations that the employer failed to "reasonably" accommodate a disabled employee by refusing or otherwise failing to modify its original accommodation when the original accommodation "did not work." *Bergeron v. LCMC Urgent Care, LLC,* 2022 WL 1238616 (E.D. La. Apr. 27, 2022). The *Bergeron* Court found that a genuine dispute of material fact existed as to

15

whether the employer's accommodation was reasonable in light of its apparent failure to re-engage in the interactive process when the original "accommodation" proved to be ineffective. *Id.* at *9-10.

Given that *Bergeron* was decided at the summary judgment stage, the district court's dismissal of Hayes' ADA claims at the pre-discovery, Rule 12(c) stage was error. Hayes requested a full-time telework accommodation, which GStek denied and responded with the lesser modification. ROA.20, 26. The modification offered did not effectively reduce the overstimulation and/or otherwise lead to Hayes' mental breakdown in January 2023. ROA.26-27. GStek necessarily became aware of Hayes' medically induced workplace absences, and the underlying ineffectiveness of its hybrid work schedule, when Hayes missed work from January 16, 2023 to January 19, 2023. GStek took no action, nor did it communicate with Hayes. ROA.21. This is a failure to engage in the interactive process as required by *Dillard.*

And GStek again ignores its inaction with respect the additional accommodation requests Hayes made in January 2023, including the re-urgence of his request to work from home. Hayes' "ADA/RA Failure to Accommodate/Failure to Engage in the Interactive Process" Cause(s) of Action" specifically "incorporates and restates each of the" previous paragraphs "as if fully set forth [t]herein." ROA.22. Hayes pled that he made additional accommodation requests, by way of a

16

request to delay attending drill, suggesting the need for medical leave, and re-urging the request/need to work from home. ROA.20-21. Moreover, Hayes plead that he attempted to follow up with GStek *several* times between January 17, 2023 and January 24, 2023. ROA.21. Hayes received no response from Slate as to any of these requests, or to his inquiry as to whether he needed to go into the facility on January 24, 2023. ROA.21. Instead, he received a termination letter on January 25, 2023, effectuating his discharge on January 26, 2023. ROA.21.

While Hayes may not have used the words "GStek failed to re-engage in the interactive process" in his Complaint, Hayes plead factual allegations plausibly supporting that ultimate conclusion. Under this Court's precedent in *Dillard* and the application as reflected in *Bergeron,* Hayes' allegations that GStek failed to re-engage in the interactive process after its initial accommodation proved ineffective—which necessarily includes its non-responsiveness to any of Hayes' post-January 16, 2023 correspondences—support a plausible failure-to-accommodate claim. The district court must be reversed.

### E. Full-Time Telework Was Not Simply Hayes' "Preferred Accommodation"

Under the facts at issue, GSTek's provision of a part-time-remote schedule was *not* among a series of alternative "effective accommodations" that could sufficiently meet Hayes' job-related needs. Hayes tried to utilize the modification GStek provided to him; however, that initial modification quickly proved to be

ineffective at remedying the overstimulation[10] for which Hayes had sought the original accommodation, and it caused Hayes to experience a mental breakdown less than two months after it was implemented. GStek did not "choose" between several accommodation options that could effectively accommodate Hayes; rather, it rejected Hayes' requested accommodation (i.e., full-time telework) and provided him an objectively *lesser* accommodation which, on the facts of this case, was not an equally "effective" option. While the ADA may not entitle Hayes to his "preferred" accommodation if a series of effective alternatives exist, that prerequisite series of effective alternatives *did not exist* in this case. *See, e.g., Pomerantz v. Houston Methodist Hosp.,* 2014 WL 5090278 (S.D. Tex. Oct. 9, 2014) ("the ADA does not provide the employee with the right to choose her preferred accommodation *from viable alternatives*")(citing *Agro Distribution,* 555 F.3d at 471.

An employer's denial of an employee's "preferred" accommodation presupposes that more than one viable accommodation option exists to enable the employee to perform his essential job functions. That being said, absent a showing of undue burden to the employer, the ADA requires the provision of, not just any modification, but an "accommodation" that effectively meets the job-related needs of the individual employee in question—here, Hayes. *See* 29 C.F.R. pt. 1630, App.,

---

[10] This overstimulation exacerbated the disabling symptoms of Hayes' Autism, Major Depressive Disorder, and Social Anxiety Disorder. ROA.24.

§ 1630.9. GSTek did not simply deny Hayes his "preferred" accommodation; in practicality, it denied, without demonstrating an undue burden, the only effective accommodation available at the time. Rule 12(c) relief is not warranted. *See, e.g., Das v. American Airlines, Inc.*, 2020 WL 364264 (N.D. Tex. Jan. 21, 2020).

### F. GSTek Has Not Established an Undue Burden Affirmative Defense

Hayes does not address the "undue burden" defense in an attempt to "preempt" the issue. Hayes, instead, raises the matter based on the district court's determination that "[p]ermitting [Hayes] to work remotely full time [] *would have likely resulted in the loss of a contract with the Army* and would have exceeded GStek's obligations under the ADA and RA's requirement for reasonable accommodation." ROA.207. This sentence contains a plethora of convoluted factual and legal findings, and Hayes interprets the statement as the court holding that Hayes' full-time telework request was not a "reasonable accommodation" because GStek could not implement the same without the "undue burden" of potentially losing its contract with the Army.

The only "fact" GStek submits in support of its affirmative defense is the speculative assertion that permitting Hayes to perform full-time telework "***potentially*** threatened GSTek's contractual relationship with the Army." ROA.92 (emphasis added). This is woefully insufficient to entitle GStek to judgment as a matter of law, certainly on a Rule 12(c) motion. Because undue hardship is an

19

affirmative defense, *Riel,* 99 F.3d at 682, an employer has to show, beyond dispute, that the requested accommodation would pose an undue hardship. And, imperatively, "[c]ourts are somewhat skeptical of hypothetical hardships that an employer thinks might be caused by an accommodation that has never been put into practice." *Picard v. St. Tammany Parish Hosp.,* 611 F.Supp.2d 608, 622 (E.D. La. Apr. 7, 2009) (citing *Cloutier v. Costco Wholesale Corp.,* 390 F.3d 126, 135 (1st Cir. 2004).

Given the fact that GStek plead that providing full-time telework would "potentially" threaten its contractual relationship with the Army—assuming that GStek has access to the subject contract and its relevant provisions—one can reasonably infer that the subject contract did not result in any real impediments to GStek granting the full-time telework Hayes requested. Moreover, Hayes alleged that Dismer—GStek's project manager—denied Hayes' full-time telework request simply because he did not want to have to accommodate "everyone else" that was disabled. ROA.20. There is no allegation that providing Hayes the full-time telework schedule, based upon his individualized disability-related limitations and job requirements, posed any undue burden to GStek whatsoever.

That being said, even if, assuming solely for the sake of argument, the GStek-Army contract mandates that GStek comply with all Army directives (regardless of their ultimate legality), GStek cannot use its "contractual

20

obligations" to the Army as a basis to avoid its own liability under the ADA. Hayes does not read this Court's holding in *Burton v. Freescale Semiconductor* nearly as narrowly as GStek. 798 F.3d 222 (5th Cir. 2015). *Burton* articulates the general principle that an employer cannot rely on its contractual obligations to a client as a defense to any claim that its own actions violated an anti-discrimination or anti-retaliation statute. While termination was the alleged illegal action at issue in *Burton*, the same logic applies to the failure-to-accommodate at issue: as an employer, GStek had an independent obligation to comply with the ADA, and a contractual obligation to discriminate—here, any contractual obligation requiring GStek to avoid implementing the reasonable accommodation request of its employee without demonstrating the undue burden required by law—would be unenforceable. *See, e.g., Burton,* 798 F.3d at 229. GStek's attempt to hide behind the Army's hypothetical and speculative "threat" to its contractual relationship with GStek if GStek allowed Hayes to telework full-time is, in actuality, no different than "Manpower's attempt to hide behind their contract with Freescale after relenting to pressure and terminating Burton." Appellee's Br. 48.

Only when a plaintiff "pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)" or Rule 12(c). *Construction Cost Data, LLC v. Gordian Group, Inc.,* 2017 WL 2266993 (S.D. Tex. Apr. 24, 2017) (citation

21

omitted). Hayes' Complaint did no such thing, and the district court erred to the extent it dismissed Hayes' claims.

### III.   The "Law of the Case" Doctrine Has No Bearing on this Appeal

In an attempt to detract the Court's attention from the district court's glaring misapplication of *Johnson* to the instant case, GStek asserts that the district court's Memorandum Ruling on the Army's Motion to Dismiss resulted in "law of the case" that precludes this Court's review of Hayes' disparate treatment and retaliation claims against GStek. Appellee's Br. 50. GStek's Brief misrepresents the substance of the district court's previous rulings; the "law of the case" doctrine has no material application here.

On the final page of its Memorandum Ruling granting the Army's Motion to Dismiss, the district court noted the general legal proposition, "discrimination/retaliatory termination cannot be a separate and distinct claim from failure to accommodate when the alleged unlawful termination is based on the alleged failure to accommodate." ROA.141 (citing cases). This statement of law immediately followed the district court's findings that: 1) the Army is not Hayes' employer, and 2) the Army did not make the decision to terminate Hayes. ROA.141. Based upon these two determinations—both of which are specific to the Army—the district court found that "[t]he only allegation Hayes makes against the Army was to advise GSTek that under the terms of the contract, full-time remote

22

work was not in the Army's best interest,'" and thereafter found that Hayes "failed to state a plausible discrimination/retaliation and failure to accommodate claims against the Army." ROA.141. Given that Hayes' disparate treatment and retaliation claims both challenge Hayes' *termination* as the adverse action, the district court dismissed Hayes' disparate treatment and retaliation claims *against the Army* based upon its finding that the Army was not involved in the termination decision. ROA.141. The district court did not, as GStek suggests, "ma[ke] a determination about the questionable structure and overlapping nature of Hayes' claims when it dismissed the Army." Appellee's Br. 52. To the contrary, rightly or wrongly, it simply found that the only act fin which the Army was the initial failure to accommodate.

At no time has Hayes argued that the holdings of *Johnson, Bess, Harris,* or any case(s) cited therein, are legally incorrect to the extent the cited law is applied to the facts of those cases. Hayes, likewise, has not disputed the existence of caselaw recognizing that "'[a] failure to accommodate' cannot serve as an adverse action for an ADA retaliation claim." *Johnson,* 550 F.Supp.3d at 961 (citation and quotation omitted). To the extent the district court rejected the Army as a "joint employer" and, instead, found that the only "action" for which the Army was in any way responsible was failing to provide Hayes full-time telework in October/November 2022, the district court's finding is not inconsistent with the

23

cases it cited. For this reason, Hayes took no issue with the district court's adoption of the general legal theories espoused in *Johnson, Bess,* and *Harris.*

Imperatively, the district court did *not,* in connection with the Army's Motion to Dismiss, actually undertake to *apply* that statement of law to an employer *whose actions unequivocally included the decision to terminate Hayes.* GSTek, however, is not the Army. It is undisputed that GStek is Hayes' "employer" and that it, acting in its capacity as such, terminated Hayes' employment on approximately January 25, 2023. ROA.18, 22, 21. This changes the analysis entirely.

Hayes' appeal on the disparate treatment/retaliation claims centers on the district court's inappropriate reliance on the factual underpinnings of *Johnson* to apply an otherwise legally sound principle to a completely distinguishable fact pattern. The district court's previous ruling did *not* address the interrelatedness of Hayes' failure-to-accommodate, disparate treatment, and retaliation claims when dismissing the Army because, rightly or wrongly, it found that the Army was not involved in the adverse action giving rise to the latter two claims. There was *not* a determination by the district court, until the Memorandum Ruling at issue on *this* appeal, that Hayes' termination-based disparate treatment and retaliation claims, "are inextricably intertwined and not distinct claims" and, thus, subject to dismissal under *Johnson.* ROA.213. Accordingly, the district court's "determination" that

24

*Johnson* applies to Hayes' claims against GStek—the indisputable employer who indisputably terminated Hayes—is ripe for review.

**IV.    Even if the "Law of the Case" Doctrine Applies, The District Court Was Free to Reassess Its Determination; Its Failure to Do So, Which Results in "Clear Error," Is Properly Subject to Review**

For the reasons above, the "law of case" doctrine is a non-issue on this appeal. That being said, solely for the sake of argument, even if the law of case doctrine applied, it is a *discretionary doctrine* that does not bar a court from reassessing an issue if it believes good reasons exist to do so (such as a change in the law or an obvious mistake). *See Pepper v. United States*, 562 U.S. 476, 506–07, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011); *United States v. Matthews,* 312 F.3d 652, 657 (5th Cir. 2002).

To the extent the district court's initial ruling could be construed to have "determined" that *Johnson* applies to Hayes' termination-based disparate treatment and retaliation claims against GStek, Hayes invited the district court to reconsider that determination by exhaustively articulating how Hayes' Complaint sets forth all requisite elements of a termination-based disparate treatment and retaliation claim against GStek. To the extent the district court declined to engage in a review of its previous determination, which Hayes submits resulted in a "clearly erroneous

25

decision" that "work manifest injustice,"[11] that declination is readily subject to this Court's review.

## V. The District Court Erroneously Considered Hayes's Claims as "Indistinguishable"

GStek's Brief ignores Hayes' citation to the *Johnson* Court's finding that the employee's ADA ***termination-based retaliation claim*** was perfectly viable. *Johnson,* 550 F.Supp.3d at 961(emphasis added). Here, just as in *Johnson,* Hayes' *termination*-based disparate treatment and retaliation claims are plausible.

Additionally, Hayes did not commit any "self-inflicted pleading error:"[12] Hayes must establish that "he was subject to an adverse employment decision on account of his disability." *LCH Grp.,* 73 F.3d at 688. And, upon Hayes establishing his *prima facie* case and GStek proffering a facially non-discriminatory basis for its adverse decision—here, absenteeism—the burden shifts back to Hayes to establish that: 1) GSTek's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that GStek's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative). *Id.* at 702.

Against this framework, Hayes is not the first to argue that, in connection with a disparate treatment termination claim, an employer's failure to

---

[11] *Free v. Abbott Lab, Inc.,* 164 F.3d 270, 272 (5th Cir. 1999).
[12] Appellee's Br. 54.

accommodate his disability *caused* the alleged performance deficiencies (here, attendance) for which he was ultimately terminated. For example, an employee made the same argument in *Hillebrand v. Dollar General Corp.,* arguing that Dollar General's failure to accommodate her disability caused the performance deficiencies for which she was ultimately terminated. 2013 WL 3761291 (M.D. Tenn. Jul. 16, 2013). The *Hillebrand* Court, in denying summary judgment on the plaintiff's *discriminatory discharge* claim,[13] noted that the relevant pretext inquiry is whether the employer "produced evidence from which a rational trier of fact could conclude that, if Dollar General had granted Piper a reasonable accommodation, Piper would not have been fired for performance deficiencies." *Id.* at 6. The same question remains here: had GStek permitted Hayes to work remotely full time, would Hayes have been fired for absenteeism? To the extent summary judgment is not warranted, a Rule 12(c) judgment certainly is not.

Under similar facts, the Ninth Circuit Court of Appeals reversed a grant of summary judgment on the plaintiff's disparate treatment/termination claim, noting, in pertinent part, that "conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination," and that "the link between the disability is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for

---

[13] The employee also brought a failure-to-accommodate claim, and the court denied summary judgment on the same. *Id.* at * 8.

performance inadequacies resulting from that disability." *Humphrey,* 239 F.3d at 1139-40 (citations omitted)

Here, GStek's stated reason for terminating Hayes was absenteeism. ROA.22. And, based on the above precedent, the causal link between Hayes' disability (and resulting conduct/absences) and termination is "particularly strong." Just as the *Humphrey* Court found that the plaintiff had created a triable issue of fact as to whether her attendance problems were caused by her OCD, Hayes has asserted that his absenteeism was caused by his disabilities. Hayes does not "conflate" claims; he suggests that Hayes' disabling conditions—and the absences resulting directly therefrom—motivated GSTek's discharge decision. Though the claims may involve similar facts, they are wholly distinct claims, with different elements, and 12(c) judgment is wholly improper.

And, with respect to Hayes' retaliation claim, Hayes alleged that he was subjected to an adverse action—termination—in retaliation for his requests for a reasonable accommodation. ROA.30. Had Hayes alleged that GStek retaliated against him by refusing to accommodate him, *Johnson* would apply; however, that is **not** what Hayes claims. ROA.30. To the extent Hayes alleges that he was terminated in retaliation for his requests for reasonable accommodation, he sets forth a plausible claim for relief. The district court erred, and must be reversed, to the extent it found otherwise.

28

**CONCLUSION**

GSTek's Opening Brief attempts to defend the district court by asserting that the court "assessed the[] facts under the standard of review and determined that Hayes's Complaint was facially *improbable*." Appellee's Br. p. 30 (emphasis added). This runs afoul of established precedent that, for purposes of Rule 12 motions "[t]he plausibility standard is *not* akin to a 'probability requirement. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Hayes need only allege facts that would "nudge[] the[] claims across the line from conceivable to plausible," *id.* at 570, and he has readily done so as to all claims. The district court must be reversed in its entirety, and the matter must be remanded for further proceedings.

/s/ James E. Sudduth, III
JAMES E. SUDDUTH, III

**CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that on November 12, 2025, this Brief was served via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov, upon all registered CM/ECF users in this appeal.

Counsel further certifies that on November 12, 2025, the foregoing motion was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov.

Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ James E. Sudduth, III
JAMES E. SUDDUTH, III

**CERTIFICATE OF COMPLIANCE**

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 6,409 words, excluding the parts exempted by Rule 32(f); and (2) the typeface and type style requirements of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word (the same program used for the word count).

/s/ James E. Sudduth, III
JAMES E. SUDDUTH, III